QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Daniel C. Posner (Bar No. 232009)
  danposner@quinnemanuel.com
  Justin C. Griffin (Bar No. 234675)
  justingriffin@quinnemanuel.com
  Laurenne M. Babayan (Bar No. 348075)
  laurennebabayan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Defendant Twitter, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACKGRID USA, INC., a California corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>TWITTER, INC., a Delaware corporation and Does 1-10, inclusive,<br><br>          Defendants. | Case No. 2:22-cv-09462-DMG-ADS<br><br>**DEFENDANT TWITTER'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  July 21, 2023<br>Time:  8:30 a.m.<br>Judge:  The Honorable Dolly M. Gee<br>Courtroom: 8C |

TO THE CLERK OF THE ABOVE-TITLED COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on July 21, 2023, at 8:30 a.m., or as soon thereafter as the matter may be heard, Defendant Twitter, Inc. ("Twitter") will, and hereby does, move the Court to grant Twitter's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the Court should dismiss the First Amended Complaint filed by Plaintiff Backgrid U.S.A., Inc. ("Backgrid") because it fails to state claims for direct, contributory, or vicarious copyright infringement, or for declaratory relief.

This motion is made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, all pleadings on file in this action, such other evidence or arguments as may be presented to the Court, and such other matters of which this Court may take judicial notice.

This motion is made following the meet and confer of counsel which took place on April 20, 2023.

DATED:  May 12, 2023                        QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP


                                        By  /s/ Daniel C. Posner
                                            Daniel C. Posner
                                            Attorneys for Defendant Twitter, Inc.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION..............................................................................................1

BACKGROUND................................................................................................2

    A.    Backgrid's Complaint ........................................................2

    B.    Backgrid's First Amended Complaint..............................2

        1.    Allegations About Backgrid...............................2

        2.    Allegations About Twitter's Platform................2

        3.    Allegations About Twitter's DMCA Compliance....................3

        4.    Backgrid's Claims For Relief..............................5

LEGAL STANDARD..........................................................................................6

ARGUMENT......................................................................................................7

I.    BACKGRID FAILS TO STATE VALID CLAIMS FOR COPYRIGHT INFRINGEMENT ...........................................................................7

    A.    Backgrid Fails To Adequately Allege Direct Infringement .................7

    B.    Backgrid Fails To Adequately Allege Indirect Infringement .............11

        1.    Backgrid Fails To Adequately Allege Underlying Direct Infringement By Any Third Party .........................11

        2.    Backgrid Fails To Adequately Allege Contributory Infringement ........................................................11

        3.    Backgrid Fails To Adequately Allege Vicarious Infringement ........................................................15

II.    BACKGRID FAILS TO STATE A VALID CLAIM FOR DECLARATORY RELIEF...................................................................17

    A.    The Court Lacks Jurisdiction Over Backgrid's Sweeping Claim For Declaratory Relief...............................................18

    B.    Backgrid's Declaratory Relief Claim Is Otherwise Improper ...........20

CONCLUSION................................................................................................22

CERTIFICATE OF COMPLIANCE ...............................................................23

1
2

# TABLE OF AUTHORITIES

Page(s)

3

## Cases

4
5

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)........................................................7, 11

6
7

*Albrecht v. Lund*,
845 F.2d 193 (9th Cir. 1988) ...................................................... 6

8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................6, 13

9
10

*Azoulai v. BMW of N. Am. LLC*,
2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .............................. 7

11
12

*Balistreri v. Pacific Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ...................................................... 6

13
14

*CoStar Grp,. Inc. v. LoopNet, Inc.*,
373 F.3d 544 (9th Cir. 2004) ...................................................... 9

15
16

*Divino Grp. LLC v. Google LLC*,
2021 WL 51715 (N.D. Cal. Jan. 6, 2021) ...............................20, 21

17
18

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005) ................................................................. 18

19

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011).................................................6, 13

20
21

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*,
747 F.3d 1060 (9th Cir. 2013)...................................................... 7

22
23

*Greater Los Angeles Council on Deadness, Inc v. Zolin*,
812 F.2d 1103 (9th Cir. 1987)...................................................... 20

24
25

*Greg Young Publishing, Inc. v. Zazzle, Inc.*,
2017 WL 2729584 (C.D. Cal., May 1, 2017) .............................. 12

26
27

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
733 F. App'x 380 (9th Cir. 2018)................................................. 7

28

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ................................................................. 6

*Io Grp., Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) .................................................. 15

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ................................................................. 20

*Lewis v. Continental Bank Corp.*,
   494 U.S. 472 (1990) ............................................................................ 18

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ............................................................................ 18

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*
   545 U.S. 913 (2005) ............................................................................ 14

*Newman v. Google LLC*,
   2021 WL 2633423 (N.D. Cal. June 25, 2021) .................................. 20, 21

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ............................................................... 11

*Perfect 10, Inc. v. Giganews, Inc.*,
   2014 WL 8628031 (C.D. Cal. Nov. 14, 2014) ........................................ 11

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ......................................... 7, 8, 9, 13, 15, 16, 17

*Perfect 10, Inc. v. Visa Intern. Service Ass'n*,
   494 F.3d 788 (9th Cir. 2007) .........................................................11, 14, 15

*Perfect 10, Inc. v. Yandex N.V.*,
   962 F. Supp. 2d 1146 (N.D. Cal. 2013) .................................................. 11

*Poppy Tex & Designs, Inc. v. Cont'l Logistic Serv., Inc.*,
   2020 WL 7315343 (C.D. Cal. Oct. 20, 2020) ........................................ 17

*Pub. Serv. Com. v. Wycoff Co.*,
   344 U.S. 237 (1952) ............................................................................ 19

*Rosen v. eBay, Inc.*,
   2018 WL 4808513 (C.D. Cal. Apr. 4, 2018) .......................................... 10

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ........................................................ 7

*Stickrath v. Globalstar, Inc.*,
    2008 WL 2050990 (N.D. Cal. May 13, 2008) ...................................... 20, 21

*Stross v. Twitter, Inc.*,
    No. 2:21-CV-8360-SVW, Dkt. 22 (First Amended Complaint)
    (C.D. Cal., Jan. 11, 2022).............................................9, 10, 12, 13, 15, 17

*Tur v. YouTube*,
    2007 WL 1893635 (C.D. Cal. June 20, 2007)........................................... 15

*Veoh Networks, Inc. v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007)................................. 7, 18, 19, 20, 21

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ............................................. 7, 8, 9, 10, 15, 16

*Zagorsky-Beaudoin v. Rhino Entertainment Company*,
    2019 WL 4259788 (D. Ariz. Sept. 9, 2019) .......................................... 16, 17

**<u>Statutes</u>**

17 U.S.C. § 106............................................................................... 7

17 U.S.C. § 512(i)....................................................................... 6, 19, 20

17 U.S.C. § 512(c)(3) ........................................................................ 12

17 U.S.C. § 512(c)(3)(A)(ii)................................................................. 12

Communications Decency Act Section 230................................................. 20

**<u>Other Authorities</u>**

Fed. Rule Civ. Pro. 12(f) .................................................................... 21

Rule 12(b)(1) ................................................................................ 7

Rule 12(b)(6) ................................................................................ 6

## **INTRODUCTION**

Plaintiff Backgrid's First Amended Complaint (the "FAC") does not remedy the defects in the original complaint that Backgrid voluntarily amended after Twitter identified its deficiencies.  To the contrary, the FAC confirms that Backgrid is unable to state claims for direct, contributory, and vicarious copyright infringement, and for declaratory relief.  The Court should dismiss Backgrid's FAC without further leave to amend.

Backgrid fails to allege Twitter's direct infringement because it does not allege the requisite "volitional" conduct by Twitter, or even that any of Backgrid's "Celebrity Photographs" at issue were included as the result of automation by Twitter's systems or otherwise—in any of Twitter's features that Backgrid identifies as the basis for Twitter's direct infringement.

Backgrid likewise fails to allege contributory infringement because its vague and conclusory allegations that it sent "compliant" DMCA notices to Twitter are inadequate to create a plausible inference that Twitter actually knew which Backgrid photos were at issue in any specific Twitter posts that Twitter could have removed.

And Backgrid does not adequately allege Twitter's vicarious infringement either, because it does not (and cannot) allege that Twitter had the practical ability to identify and remove the alleged infringements apart from Backgrid providing notice of them, or that Twitter benefitted financially from the alleged infringements.

Finally, Backgrid's claim for declaratory relief fails as a premature and unnecessary attempt to adjudicate Twitter's anticipated DMCA defense, and because it is wildly overbroad—and presents no justiciable case or controversy—to the extent it is based on Twitter's alleged response to claims by third parties relating to copyrighted works that have nothing to do with Backgrid and that are not at issue in the FAC.

After Backgrid failed to salvage its claims through its initial amendment, the Court should now dismiss Backgrid's claims with prejudice.

# BACKGROUND

### A.   Backgrid's Complaint

Backgrid filed its Complaint on December 30, 2022, asserting claims for (i) direct, contributory, and vicarious copyright infringement, and (ii) declaratory relief. Dkt. 1.   Backgrid failed to state valid claims, so the parties met and conferred regarding Twitter's anticipated motion to dismiss, following which Backgrid agreed to amend its Complaint.

### B.   Backgrid's First Amended Complaint

Backgrid filed the FAC on March 13, 2023.  Dkt. 23.

#### 1.   Allegations About Backgrid

Backgrid alleges it is "the world's premier celebrity-related photograph agency."  FAC ¶ 6.   Backgrid alleges it owns copyrights in all the "Celebrity Photographs known to have been infringed," and it includes a list of the copyright registration numbers for them (albeit without showing images of them or describing what the images depict) in Exhibit A to the FAC.  *Id*. ¶ 7.   Backgrid alleges that its "timely registered Celebrity Photographs [are] collectively attached as Exhibit B" to the FAC, though Exhibit B contains a compilation of Twitter posts, many or all of which depict multiple photographs and other visual content, making it unclear what the copyrighted Celebrity Photographs actually are.  *See* Dkts. 23-2 through 23-31.

#### 2.   Allegations About Twitter's Platform

Backgrid alleges that Twitter operates a "simple, but spectacularly profitable" platform for "public self-expression and conversation in real time.  FAC ¶ 9.  Backgrid alleges that Twitter "monetizes its platform," including by "enabling advertisers to promote their brands, products, and services through the Twitter platform that then permits targeting specific audience members by the accounts they follow and the actions they have taken on the Twitter platform"; selling "the data it collects from its users . . . to their clients for commercial use"; and using "the information it collects

[to] target[] advertisements to specific user audiences . . . by displaying advertisements calculated to interest a given audience." *Id.* ¶ 10.

Backgrid alleges, "on information and belief," that "the Celebrity Photographs were displayed in tweet-feeds, along with advertisements that targeted particular groups of Twitter users" (*id.*), though it offers no facts supporting the basis for this "belief," and it provides no examples of this occurring. Backgrid also alleges "on information and belief," though without reference to the Celebrity Photographs, that "Twitter charges advertisers more based on the amount of the interaction the advertisement-tweet generates," so that "it is important to Twitter to have attractive and compelling tweets placed around the advertisement tweet to gain more traffic and more advertisement interaction." *Id.* Backgrid further alleges, again without referencing the Celebrity Photographs, that, "[t]o keep its users engaged while promoting the advertisements on which its revenue depends, Twitter also sends emails to its users with links to tweets that they might not otherwise see," and that by "doing so, Twitter increases the number of views those advertisements receive, thereby increasing its own advertising revenue." *Id.* Backgrid alleges that, "[o]nce a Twitter user uploads a photo, Twitter selects, orders, and/or arranges content to display to other Twitter users, including content from Twitter accounts that are not among those 'followed' by the viewing user." *Id.* ¶ 11.

Backgrid does not allege that any Twitter employees selected any of the Celebrity Photographs for inclusion in any of the features it identifies, or state any facts showing that the Celebrity Photographs actually were included in any of those features, whether as the result of automation or otherwise.

3.    Allegations About Twitter's DMCA Compliance

Backgrid alleges that Twitter "claims to have DMCA compliant take-down policies," but that Twitter's policies are "honored in the breach." *Id.* ¶¶ 13-15. Without providing any examples or factual support, Backgrid alleges that Twitter

"regularly fails and refuses to comport with the industry standard" for terminating accounts of repeat infringers. *Id.* ¶ 16.

Backgrid alleges that an unspecified number of unidentified Twitter "users" have violated Backgrid's rights in "at least 1,526" unspecified Celebrity Photographs. *Id.* ¶¶ 28, 33. Backgrid further alleges that it has sent "more than 6,700 DMCA takedown notices" to Twitter relating to an unspecified number of unidentified copyrighted works at unspecified times, but that Twitter did not take down the unidentified posts or suspend the accounts of any of the unidentified "repeat infringer[s]." *Id.* ¶ 18; *see also id.* ¶ 29. Backgrid alleges that its purported DMCA notices gave "Twitter knowledge of specific infringing material, including by providing a link to where the infringement was stored and where it was displayed," but that, "[d]espite having such knowledge, . . . Twitter failed to take simple measures to prevent further damage, such as disabling the infringement and deleting it from its servers, as well as suspending the infringing accounts which repeatedly infringed the copyrights belonging to Backgrid." *Id.*

Without providing any examples or offering any factual support, Backgrid alleges that "Twitter treats Backgrid's DMCA notices differently than notices from other parties," that "it attempts to feign ignorance of what is in Backgrid's DMCA notices, thus acting with willful blindness towards the infringement of Backgrid's works," and that "[o]ther parties send DMCA notices similar to those sent by Backgrid, to which Twitter responds by taking the work down." *Id.* ¶ 19.

Of the "more than 6,700" unidentified "DMCA takedown notices" that Backgrid alleges it sent to Twitter relating to the Celebrity Photographs, Backgrid purports to describe 73 of them (allegedly relating to 49 unspecified "timely registered infringing photographs") posted by the "BSO" Twitter account, and another 101 (allegedly relating to 42 unspecified "timely registered photographs") posted by the "foochia" account, by identifying the dates when it sent those notices and providing the urls where the posts depicting the alleged infringing photographs can be found.

*Id.* ¶¶ 21-24.  Backgrid alleges that "[e]ach infringement remains live." *Id.* ¶ 24.  This allegation is demonstrably false as to the "BSO" posts, none of which is "live," as can be confirmed by checking the urls Backgrid identifies.  *See, e.g.*, https://twitter.com/bso/status/999723833413308416; https://twitter.com/bso/status/1041018833249730561.

### 4.  Backgrid's Claims For Relief

Backgrid asserts two claims for relief.

***First***, Backgrid asserts a claim for "Direct, Contributory, and Vicarious Copyright Infringement."  Backgrid alleges that Twitter "directly infringed" by "continuing to publicly display the photos long after being apprised of infringement, using Twitter's explore feature to choose and arrange infringing content, promoting tweets based on subscription models, such as the Blue Subscription, in which verified users pay a monthly fee to have their tweets promoted on others' tweet-feeds, and continuing to store copies of the photos on [Twitter's] servers without Backgrid's consent." *Id.* ¶ 34.

Backgrid alleges, without any specific factual support or examples, that Twitter has "contributorily infringed the Celebrity Photographs, including without limitation by encouraging its users to upload and edit photographs found on the Internet, failing to advise users that civil and criminal penalties attach to the unauthorized copying, posting, and public display of copyrighted photographs, and by creating a system and practice of removing metadata from each unlawfully posted and displayed Celebrity Photograph." *Id.* ¶ 35.

And Backgrid alleges, again without any factual support or examples, that Twitter "vicariously infringed the Celebrity Photographs" because it "has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so, as shown by its willingness and ability to take down infringement identified in DMCA notices sent by other parties," and it "had a direct financial interest in the infringement because it used the information it collects from tweets and user

engagement to target advertisements to specific user audiences." *Id.* ¶ 35.  Backgrid also alleges, "on information and belief," and without providing any factual support for the basis of its belief, that "the Celebrity Photographs were displayed in tweet-feeds, along with advertisements that targeted particular groups of Twitter users." *Id.*

**Second**, Backgrid asserts a claim for "Declaratory Relief:  No Safe Harbor Under the DMCA," in which it alleges that "an actual controversy exists over whether Twitter has satisfied the requirements of 17 U.S.C. 512(i) by adopting and reasonably implementing a Digital Millennium Copyright Act repeat infringer policy, and, therefore, whether Twitter is entitled to the safe harbor." *Id.* ¶ 44.  Backgrid "seeks a declaration that Twitter has neither adopted nor reasonably implemented a repeat infringer policy, and, as such, is liable for each of the works infringed on its platform and is not entitled to the safe harbor in any circumstances for any work until it complies with Section 512(i)." *Id.* ¶ 46.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but "[t]hreadbare recitals of the elements … supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "Although factual allegations are taken as true, [courts] do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation omitted).

Dismissal is proper where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacific Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  If "allegations of other facts consistent with the challenged pleading could not possibly cure" deficiencies in the complaint, dismissal with prejudice is appropriate.  *See Albrecht v. Lund*, 845 F.2d

193, 195 (9th Cir. 1988). Likewise, "[w]here the amended complaint fails to cure the pleading deficiencies" in the original, "'[t]he district court could reasonably conclude that further amendment would be futile.'" *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380, 382 (9th Cir. 2018) (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)) (affirming district court's dismissal with prejudice); *see also Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *10 (N.D. Cal. Apr. 13, 2017) (dismissing claims without leave to amend where "Plaintiffs [] already had one opportunity for substantive amendments").

Rule 12(b)(1) allows a court to dismiss a claim for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Because the plaintiff invoked the Court's jurisdiction, the "plaintiff bears the burden of proof on the necessary jurisdictional facts." *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1269 (S.D. Cal. 2007) (citation omitted).

## **ARGUMENT**

### I. **BACKGRID FAILS TO STATE VALID CLAIMS FOR COPYRIGHT INFRINGEMENT**

#### A. **Backgrid Fails To Adequately Allege Direct Infringement**

"To establish a prima facie case of direct infringement, a plaintiff 'must show ownership of the allegedly infringed material' and 'demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.'" *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Id.* (citing *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2013)).

The Ninth Circuit's decision in *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019), controls here and compels the dismissal of Backgrid's direct infringement claim. In *Zillow*, the Ninth Circuit delineated the boundary between

volitional and non-volitional conduct for website owners.  Volitional conduct giving rise to direct infringement liability requires "active[] involve[ment] in the infringement." *Id*. at 732.  In *Zillow*, for example, Zillow was liable for direct infringement where "Zillow moderators selected and tagged" infringing photos "for searchable functionality." *Id*. at 736.  "Put differently, active conduct by Zillow met the volitional-conduct requirement for direct infringement." *Id*.

The *Zillow* court also explained that "activities that fall on the other side of the line, such as 'automatic copying, storage, and transmission of copyrighted materials, when instigated by others, do not render an Internet service provider strictly liable for copyright infringement." *Id*. (quoting *Giganews*, 847 F.3d at 670) (cleaned up). Accordingly, the court held that Zillow did not directly infringe through its online platform because "[a]ny volitional conduct with respect to [the infringing] photos was taken by the users, not Zillow." *Id*. at 737.  The court reasoned that "Zillow's conduct with respect to [the infringing photos] amount[ed] to, at most, passive participation in the alleged infringement of reproduction and adaptation rights and is not sufficient to cross the volitional-conduct line." *Id*. at 738.

Here, Backgrid's direct infringement claim should be dismissed because the FAC does not allege any conduct by Twitter that could qualify as "volitional."[1]  Like the plaintiff in *Zillow*, and even assuming the truth of its allegations of direct infringement (*see* FAC ¶¶ 11, 34), Backgrid fails to allege that the features of the Twitter platform it identifies are anything more than passive, automated acts that are consistent with the general operation of Twitter's website.  For example, although Backgrid alleges that "Twitter selects, orders, and/or arranges content to display to other Twitter users" (FAC ¶ 11), it never alleges that Twitter's employees (human

---

[1]   Although Backgrid's FAC asserts a single claim for "Direct, Contributory, and Vicarious Copyright Infringement," these are distinct theories of infringement and should be analyzed separately for purposes of determining whether Backgrid has stated a valid claim under any theory.

actors) take these actions, or that they are not triggered automatically by algorithms that control the overall functioning of Twitter's website.  Because Backgrid fails to allege that Twitter was actively involved in the infringement beyond the passive operation of its website, the FAC fails to state a claim for direct infringement.  *See Giganews*, 847 F.3d at 668 ("The evidence before us shows only that Giganews's actions were akin to 'passively storing material at the direction of users in order to make that material available to other users upon request,' or automatically copying, storing, and transmitting materials upon instigation by others.") (citing *CoStar Grp,. Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (9th Cir. 2004)).

Indeed, this Court has previously dismissed the same claim for direct infringement against Twitter supported by nearly identical allegations.  In *Stross v. Twitter*, the plaintiff (a photographer) alleged that Twitter (1) "designed its website to algorithmically select content" and (2) "directly and affirmatively" decided what content to display "through both human employees and automated processes designed and controlled by human employees."  2022 WL 1843142, at *2 (C.D. Cal. Feb. 28, 2022) (internal quotes and citations omitted).  The plaintiff further alleged that "Twitter decides what content (including photographs) is suggested, recommended, and/or displayed to users" through Twitter's "curation of the 'trends,' 'moments,' searches, and advertisements on Twitter's Platform, displays photographs to non-posting users that would otherwise only be seen on the posting user(s)'s profile page(s)."  *Id*.  The Court found those allegations lacking for failure to specify "whether Twitter's 'conduct' occurs automatically, akin to Zillow's 'behind-the-scenes technical work,' or whether Twitter is actively involved in the alleged infringement."  *Id*. (citing *Zillow*, 913 F.3d at 738).

Here, as in *Stross*, Backgrid alleges that Twitter displays, chooses, arranges, promotes, and stores the Celebrity Photographs (Dkt. 23 at ¶ 34), but fails to specify whether Twitter actively performs these acts, or whether the conduct stems from automated functionality on Twitter's website.  That failure is fatal to Backgrid's

allegations of direct infringement. *See Stross*, 2022 WL 1843142, at \*2; *see also Rosen v. eBay, Inc.*, 2018 WL 4808513, at \*5 (C.D. Cal. Apr. 4, 2018) (dismissing direct infringement claim where plaintiff did not allege that "Defendant's systems are not automated, or that [a user] did not use Defendant's automated systems to post the infringing images").

Nor can Backgrid sustain a claim for direct infringement based on its allegations that Twitter "continued" to "publicly display the photos long after being apprised of infringement" and "store copies of the photos on [its] servers without Backgrid's consent." Dkt. 23 at ¶ 34. This Court has "already conclusively determined" that the "failure to remove the infringing images from [the defendant's] servers after it received Plaintiff's [notices of infringement] does not constitute the volitional conduct necessary for direct copyright infringement." *Rosen*, 2018 WL 4808513, at \*5.

Backgrid also fails to establish any "nexus" between Twitter's conduct that is "sufficiently close and causal to the illegal copying." *Zillow*, 918 F.3d at 732. Apart from its allegations that Twitter continued to publicly display and store the Celebrity Photographs, Backgrid merely alleges generally that Twitter uses its "explore" feature to "choose and arrange infringing content" and "promot[e] tweets based on subscription models." FAC ¶ 34. Such allegations lack any nexus between Twitter's conduct and the infringement of the Celebrity Photographs specifically. *See Stross*, 2022 WL 1843142, at \*3 ("Not a single allegation in Plaintiff's FAC suggests that Twitter actively (or even passively) copied, shared, or reposted ***Plaintiff's*** posts.") (emphasis in original). Like the plaintiff in *Stross*, Backgrid "would have the Court infer that Twitter displayed [its] photographs 'in the same way' that it displays other photographs on its platform," which is insufficient to state a claim for direct infringement. *Id.*

## B.   Backgrid Fails To Adequately Allege Indirect Infringement

### 1.   Backgrid Fails To Adequately Allege Underlying Direct Infringement By Any Third Party

A plaintiff seeking to show secondary copyright infringement (including contributory and vicarious infringement) must establish, as a threshold matter, "that there has been direct infringement by third parties." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (citing *A&M Records, Inc. v. Napster*, *Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)); *see also Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1158 (N.D. Cal. 2013) ("Like contributory liability, vicarious liability requires an underlying act of direct infringement.").

Here, Backgrid fails to allege that third-party Twitter users—or any third party, for that matter—directly infringed Backgrid's asserted copyrights. The FAC contains numerous allegations regarding, among other things, Twitter's alleged failures to stop vaguely identified infringement on its platform. *See, e.g.*, Dkt. 23 at ¶ 35. Yet the FAC falls short of alleging any specific instances of direct infringement by any third party through whom Twitter might become secondarily liable. For that reason alone, the Court should dismiss Backgrid's contributory and vicarious infringement claims.

### 2.   Backgrid Fails To Adequately Allege Contributory Infringement

In the Ninth Circuit, "one contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Backgrid fails to adequately allege these elements.

***First***, to allege Backgrid's "knowledge of another's infringement," Backgrid must allege that Twitter had "actual knowledge of specific acts of infringement." *Perfect 10, Inc. v. Giganews, Inc*., 2014 WL 8628031, at *7 (C.D. Cal. Nov. 14, 2014). Backgrid tries to meet this standard by relying on its alleged transmission of "DMCA takedown notices." *See* FAC ¶ 18. As a matter of law, however, a DMCA notice is "effective" to put a service provider on notice of a claimed infringement only if it

includes a specified set of information concerning the copyrighted work and the infringing content at issue. *See* 17 U.S.C. 512(c)(3); *see also Greg Young Publishing, Inc. v. Zazzle, Inc.*, 2017 WL 2729584, at \*7 (C.D. Cal., May 1, 2017) ("a deficient notice cannot be used to establish knowledge").

Here, Backgrid alleges in conclusory fashion that "each" of the "more than 6,700 DMCA takedown notices" it sent to Twitter "complied with" 17 U.S.C. 512(c)(3). FAC ¶ 18. But apart from providing the dates when it sent a tiny portion of those notices and the locations (urls) of the Twitter posts supposedly at issue in that subset, Backgrid offers no facts at all about its notices—and nothing that could substantiate its claim that they actually were "compliant with" the DMCA, and thus "effective" to put Twitter on notice of the alleged infringements. Backgrid notably does not include copies of any of its purported DMCA notices, or even describe the contents or format of them. Nor does it allege that its notices identified the copyrighted photographs at issue in them, which is required under 17 U.S.C. § 512(c)(3)(A)(ii). And other than the small sample of its notices relating to two alleged Twitter users ("BSO" and "foochia"), Backgrid does not provide the dates of the notices or the locations (urls) of the infringing content it allegedly requested to be removed, or even a description of that content. Backgrid also does not allege any facts about Twitter's responses to its purported DMCA notices, including whether Twitter requested additional information to help it identify the alleged infringing content, and whether Backgrid provided that information.

For sake of comparison, in *Stross v. Twitter*, Judge Wilson concluded that the plaintiff had adequately alleged Twitter's knowledge of the alleged infringement for purposes of its claim for contributory infringement based on the plaintiff's purported DMCA notices, but the plaintiff there provided far more information regarding its notices than Backgrid does here. In particular, the plaintiff provided the dates of each notice it sent, and attached as exhibits to its complaint copies of its email correspondence with Twitter relating to them. *See Stross*, 2022 WL 1843142, at \*5.

The plaintiff also described its DMCA notices in detail, explaining that each included "(1) a table of each Subject Work matched to screen captures of the corresponding Infringing Use(s) and their respective URLs, and (2) an additional list of those URLs (i.e., URLs for the tweets displaying unauthorized copies of the Subject Works paired with URLs specifically for the images included in/with those tweets) in clickable form," and provided a representative sample of the format and content of its notices. *See Stross v. Twitter, Inc.*, No. 2:21-CV-8360-SVW, Dkt. 22 (First Amended Complaint) (C.D. Cal., Jan. 11, 2022).

In contrast, Backgrid has provided no information at all as to the vast majority of its purported DMCA notices, other than a conclusory statement that they are "compliant." Backgrid's conclusory allegation about the purported legal sufficiency of its DMCA notices is insufficient to allege Twitter's "actual knowledge of specific acts of infringement." *See, e.g., Ashcroft*, 556 U.S. at 678 (2009); *Fayer*, 649 F.3d at 1064. Backgrid has thus failed to allege the first required element of its claim for contributory infringement.

**Second**, and for the same reasons, Backgrid fails to adequately allege that Twitter "materially contributed" to the alleged infringement. "In the online context, [the Ninth Circuit has] held that a computer system operator is liable under a material contribution theory of infringement if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017) (internal quotes and citations omitted). As discussed above, Backgrid has not provided sufficient allegations to demonstrate that it adequately informed Twitter of the alleged infringements through its purported DMCA notices. Backgrid's failure to allege that Twitter had actual knowledge of the specific infringing material available on its systems is fatal to Backgrid's claim of "material contribution," and is an independent basis to dismiss Backgrid's claim for contributory infringement.

***Third***, Backgrid likewise fails to allege inducement—and it does not appear to even attempt to do so. "[T]he standard for inducement liability is providing a service with the object of promoting its use to infringe copyright." *Visa*, 494 F.3d at 801 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 937 (2005)). "[M]ere knowledge of infringing potential or actual infringing uses would not be enough here to subject [a defendant] to liability. Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves." *Grokster*, 545 U.S. at 937. "Instead, inducement premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise." *Visa*, 494 F.3d at 801 (quoting *id.* at 937).

According to the FAC, "[t]o keep its users engaged while promoting the advertisements on which its revenue depends, Twitter also sends emails to its users with links to tweets that they might not otherwise see. Twitter thus provides links to tweets from accounts that are not 'followed' by the targeted user." FAC ¶ 10. Backgrid seems to suggest that these emails from Twitter were inducement, but it fails to allege that Twitter included the Celebrity Photographs in any such emails. Backgrid also alleges that "it is important to Twitter to have attractive and compelling tweets placed around the advertisement tweet to gain more traffic and more advertisement interaction," but again, it does not allege that any of its copyrighted works were placed around any advertisements on Twitter's websites. *Id.* In fact, nowhere in the FAC does Backgrid allege that its Celebrity Photographs were emailed or promoted to users in any way. Backgrid merely describes a business model that Twitter utilizes to promote tweets, which does not constitute an accusation that Twitter is "providing a service with the ***object of promoting its use to infringe copyright***." *Visa*, 494 F.3d at 801. At best, the FAC possibly alleges that Twitter has "mere knowledge of infringing potential," but that is insufficient to subject Twitter to liability for contributory infringement. *Id.*

3.   Backgrid Fails To Adequately Allege Vicarious Infringement

"To prevail on a claim for vicarious infringement, a plaintiff must prove 'the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity.'" *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (quoting *Visa*, 494 F.3d at 802 (9th Cir. 2007)). The allegations in the FAC fail to satisfy either element.

***First***, the Ninth Circuit has held that "the right and ability to supervise the infringing conduct" "requires both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (internal quotes and citations omitted).  The "pertinent inquiry is not whether [the defendant] has the right and ability to control its system, but rather, whether it has the right and ability to control the infringing activity." *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1151 (N.D. Cal. 2008) (emphasis in original).  This element further "presupposes some ***antecedent ability*** to limit or filter copyrighted material." *Tur v. YouTube*, 2007 WL 1893635, at *3 (C.D. Cal. June 20, 2007) (emphasis added).

In *Stross*, the Court summarily dismissed the plaintiff's vicarious infringement claim against Twitter on the grounds it was "premised entirely on conclusory allegations and fails to state a claim."  2022 WL 1843142, at *4.  In particular, the Court noted that the plaintiff had pleaded "no facts to suggest that Twitter had the practical ability to locate and remove his photos without any knowledge of them or their location." *Id.* at *4 n.2.

Backgrid's allegations fare no better.  It simply alleges in conclusory fashion that "Twitter has the right and ability to supervise the infringement because it has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so, as shown by its willingness and ability to take down infringement identified in DMCA notices sent by other parties." FAC ¶ 35.  But Backgrid fails to allege that Twitter has the ability to identify and ferret out any infringing content—

let alone the Celebrity Photographs in particular—without being told where to locate them. Backgrid's allegations are insufficient. *See Zillow*, 918 F.3d at 746 (affirming district court grant of Zillow's motion for JNOV on vicarious infringement where "there was insufficient evidence that Zillow had the technical ability to screen out or identify infringing VHT photos among the many photos that users saved or uploaded daily to [Zillow's platform]").

   ***Second***, the "essential aspect" of the inquiry as to whether Twitter has a direct financial interest in the infringing activity "is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Giganews*, 847 F.3d at 673. In the context of a website, financial benefit can be shown when consumers were drawn to defendant's services because of the infringing materials at issue. *Id.* However, a plaintiff must show more than that consumers were simply drawn to the defendant's services because infringing materials more generally were available on the defendant's website. *See, e.g.*, *id.* at 674 (affirming dismissal where plaintiff "provides evidence that suggests only that some subscribers joined [defendant's website] to access infringing material generally; [plaintiff] does not proffer evidence showing that [defendant] attracted subscriptions because of the infringing [plaintiff] material"); *Zagorsky-Beaudoin v. Rhino Entertainment Company,* 2019 WL 4259788, at *9 (D. Ariz. Sept. 9, 2019) ("The Complaint includes no factual allegations that the listing of the [at issue] track on Defendant eBay's site affected Defendant eBay's user base in any way, and thus, Plaintiff has not alleged facts that Defendant eBay had a direct financial interest in others' alleged direct infringement of her copyright.").

   Here, Backgrid alleges that Twitter is liable for vicarious infringement because it had a direct financial interest in using information gathered from tweets to target advertisements to specific user audiences and that, "on information and belief," the Celebrity Photographs "were displayed in tweet-feeds, along with advertisements that

-16-

targeted the particular groups of Twitter users." FAC ¶ 35. But again, the FAC fails to allege that any of the Celebrity Photographs were specifically utilized or promoted to target advertisements to specific user audiences. Backgrid merely "suggests only that some subscribers joined [Twitter] to access infringing material generally." *Giganews*, 847 F.3d at 674 (emphasis added). Backgrid also does not proffer any facts "showing that [Twitter] attracted subscriptions because of the infringing [] material," but instead suggests that its Celebrity Photographs were posted alongside advertisements, like every other post on Twitter's website. *Id*. Nor does Backgrid show that the Celebrity Photographs "affected [Twitter's] user base in any way," as is required to show direct financial interest. *Zagorsky-Beaudoin,* 2019 WL 4259788, at *9. And Backgrid fails to offer any factual basis for its supposed "information and belief" regarding Twitter's "display" of the Celebrity Photographs, rendering these allegations deficient for this reason too. *See, e.g.*, *Poppy Tex & Designs, Inc. v. Cont'l Logistic Serv., Inc*., 2020 WL 7315343, at *4 (C.D. Cal. Oct. 20, 2020) (allegations made "on information and belief" must be "accompanied by a statement of facts upon which the belief is founded").

Thus, as the Court concluded in *Stross*, the FAC here "does not establish any sort of plausible link between the photographs at issue and any financial benefit to Twitter." *Stross*, 2022 WL 1843142, at *4, n.2. As a result, Backgrid's claim for vicarious infringement fails.

## II.   BACKGRID FAILS TO STATE A VALID CLAIM FOR DECLARATORY RELIEF

To the extent Backgrid's claim for declaratory relief seeks a sweeping declaration that would adjudicate Twitter's rights to assert a DMCA defense to claims for infringement by parties other than Backgrid involving works that are not at issue in the FAC, it is wildly overbroad, and the Court lacks jurisdiction over it. And even if construed more narrowly to apply only to Backgrid's asserted copyrighted works,

the claim still fails as a premature, duplicative, and unnecessary attempt to adjudicate an affirmative defense through declaratory relief.

## A.   The Court Lacks Jurisdiction Over Backgrid's Sweeping Claim For Declaratory Relief

Federal courts are "courts of limited jurisdiction," possessing "only that power authorized by the Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). "Article III denies federal courts the power 'to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving 'real and substantial controversies admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (citations and internal quotations omitted).

To satisfy Article III's case-or-controversy requirement, the dispute underlying a declaratory judgment action must "be 'definite and concrete, touching the legal relations of the parties having adverse legal interests,'" "be 'real and substantial,'" and "admi[t] of a specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Veoh Networks*, 522 F. Supp. 2d at 1269 (citing *MedImmune*, 549 U.S. at 127). Because of the limitations on a Court's jurisdiction over claims for declaratory relief, "[c]ourts must exercise caution in entertaining declaratory relief actions where rulings are sought that would reach far beyond the

1   particular case." *Id*. at 1271 (citing *Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237, 243
2   (1952)).

3          Backgrid's claim for declaratory relief fails to meet these basic requirements
4   for Article III jurisdiction.  Backgrid's claim seeks a declaration "that Twitter has
5   neither adopted nor reasonably implemented a repeat infringer policy, and, as such, is
6   liable ***for each of the works infringed on its platform*** and is not entitled to the safe
7   harbor ***in any circumstances*** for ***any work*** until it complies with Section 512(i)."
8   FAC ¶ 46 (emphasis added).  In effect, Backgrid asks the Court to issue a sweeping
9   judgment of Twitter's repeat infringer policies as to infringement of any and all works
10  that users have displayed on its platform, apparently in the past, present, and future,
11  and regardless of whether ***Backgrid*** holds copyrights in those works and asserts in the
12  FAC that Twitter infringed them.

13         Article III confers no jurisdiction on this Court to grant such relief.  To the
14  extent Backgrid's claim would encompass potential infringement on Twitter's
15  platform of copyrights owned by third parties, or that Backgrid otherwise does not
16  assert in the FAC, the relief Backgrid seeks "would necessarily take the form of an
17  advisory opinion." *Veoh*, 522 F. Supp. 2d at 1269.  In *Veoh*, the plaintiff sought a
18  declaration that it was "not liable for infringing any of Defendant's rights and is
19  entitled to the Section 512(c) safe harbor." *Id*.  The Court concluded it lacked
20  jurisdiction to decide the claim because the plaintiff sought "a blanket validation of
21  the ongoing legality of [its] business model" through a declaration of its entitlement
22  to a safe harbor "as equally applicable against Defendant as to any other copyright
23  holder." *Id*.  As in *Veoh*, "the Court cannot determine whether a safe harbor for
24  copyright infringement exists without knowing which rights are at stake." *Id*.; *see*
25  *also id*. at 1270 ("Such a declaration's effect on each one of Defendant UMG's
26  copyrights would be uncertain enough; the effect on all other copyright holders not
27  before the Court would be even more nebulous.").  Backgrid's claim must be

28

1  dismissed because it asks the Court to adjudge rights of individuals and entities that
2  are not parties to this action.

3      **B.    Backgrid's Declaratory Relief Claim Is Otherwise Improper**

4         Even if the Court had jurisdiction over Backgrid's sweeping and overbroad
5  claim for declaratory relief—which it does not—the Court should exercise its
6  discretion to dismiss the claim as either premature or redundant. "The Declaratory
7  Judgment Act gives the Court the authority to declare the rights and legal relations of
8  interested parties, but not a duty to do so." *Id.* (citing *Leadsinger, Inc. v. BMG Music
9  Pub.*, 512 F.3d 522, 533 (9th Cir. 2008)); *see also Newman v. Google LLC*, 2021 WL
10  2633423, at *13 (N.D. Cal. June 25, 2021) ("The Court's jurisdiction under the
11  Declaratory Judgment Act is discretionary, and the Court has an obligation to exercise
12  caution in deciding whether to exercise that discretion."). And "[a]s a general rule,
13  the Court should deny declaratory relief 'when it will neither aid in clarifying and
14  settling legal relations in issue nor terminate the proceedings and afford the parties
15  relief from the uncertainty and controversy they faced.'" *Stickrath v. Globalstar, Inc.*,
16  2008 WL 2050990, at *7 (N.D. Cal. May 13, 2008) (quoting *Greater Los Angeles
17  Council on Deadness, Inc v. Zolin*, 812 F.2d 1103, 1112 (9th Cir. 1987)).

18         Here, Backgrid's claim for declaratory relief should be dismissed because it is
19  entirely anticipatory and therefore premature: Twitter's defense under Section
20  512(i)'s safe harbor is not presently before the Court, yet Backgrid nonetheless asks
21  the Court to preemptively decide its validity. The court's decision in *Divino Grp.
22  LLC v. Google LLC*, 2021 WL 51715 (N.D. Cal. Jan. 6, 2021), is instructive. There,
23  the plaintiffs sought a declaration that Section 230 of the Communications Decency
24  Act was unconstitutional. 2021 WL 51715, at *10. The *Divino* court dismissed the
25  claim for declaratory relief, reasoning that the plaintiffs appeared to have "included
26  [that claim] in anticipation of defendants' assertion of Section 230 immunity as an
27  affirmative defense to plaintiffs' claims." *Id.* at *11. The court explained that "using
28  the Declaratory Judgment Act to anticipate an affirmative defense is not ordinarily

proper," noting that "numerous courts have refused to grant declaratory relief to a party who has come to court only to assert an anticipatory defense." *Id.* (quoting *Veoh*, 522 F. Supp. 2d at 1271). The court further reasoned that "[d]ismissal of a declaratory relief claim intended to anticipate an affirmative defense is appropriate, particularly where, as here, the Court need not consider the affirmative defense in order to resolve defendants' motion to dismiss plaintiffs' other claims." *Id.* at *11.

Similarly, Backgrid's attempt to adjudicate Twitter's anticipated DMCA defense is an improper use of the Declaratory Judgment Act. *See Newman v. Google LLC*, 2021 WL 2633423, at *14 (N.D. Cal. June 25, 2021) ("[D]ismissal of a claim under the Declaratory Judgment Act is appropriate where a claim is intended to anticipate an affirmative defense."). Moreover, dismissal of Backgrid's claim is particularly appropriate because, as in *Divino*, the Court need not consider Backgrid's declaratory relief claim to resolve this Motion with respect to Backgrid's other claims. *See Divino*, 2021 WL 51715, at *11; *see also Newman*, 2021 WL 2633423, at *14 ("This principle is particularly relevant where, as is the case here, the Court does not consider Defendants' affirmative defense in granting Defendants' motion to dismiss.") (citing *Divino*, 2021 WL 51715, at *11).

Finally, even if it were otherwise permissible for Backgrid to anticipate Twitter's potential DMCA defense, and the Court otherwise had jurisdiction over Backgrid's claim for declaratory relief, the claim would still fail for being redundant of Twitter's defense, and thus unnecessary. Courts routinely dismiss such redundant claims. *See Stickrath*, 2008 WL 2050990, at *3 ("Numerous courts have used that discretion to dismiss counterclaims under Fed. Rule Civ. Pro. 12(f) where they are either the 'mirror image' of claims in the complaint or redundant of affirmative defenses."). There is no aspect of Twitter's potential DMCA defense that could not be adjudicated through Twitter's assertion of that defense. There is thus no need for a duplicative claim for declaratory relief that seeks to do the same thing.

1

## **<u>CONCLUSION</u>**

2     For the foregoing reasons, Twitter respectfully requests that the Court dismiss

3 the FAC without further leave to amend.

4

5 DATED:  May 12, 2023                    QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
6

7

8                                         By   _/s/ Daniel C. Posner_____
                                               Daniel C. Posner
9                                              Attorneys for Twitter, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF COMPLIANCE**

2       The undersigned, counsel of record for Twitter, Inc., certifies that this brief

3   contains 6,985 words, which complies with the word limit of L.R. 11-6.1.

4
       DATED: May 12, 2023                QUINN EMANUEL URQUHART &
5                                         SULLIVAN, LLP
6

7

8                                  By ____*/s/ Daniel C. Posner*_____
9                                     Daniel C. Posner
                                      Justin C. Griffin
10                                    Attorneys for Twitter, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28