David Quinto (Bar No. 106232)
Dquinto@onellp.com
Peter R. Afrasiabi (Bar No. 193336)
pafrasiabi@onellp.com
Joanna Ardalan (Bar No. 285384)
jardalan@onellp.com
**ONE LLP**
23 Corporate Plaza, Suite 150
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

*Attorneys for Plaintiff,*
Backgrid USA, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BACKGRID USA, INC., a California corporation<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., a Delaware corporation and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:22-cv-09462-DMG-ADS<br>Hon. Judge Dolly M. Gee.<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**<br><br>Complaint served: January 6, 2023<br>Trial Date: None Yet |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................ 2
        A.      Plaintiff Backgrid and Its Photographs ...................................... 2
        B.      Twitter and Its Infringement of Backgrid's Copyrights .............. 3

III.    LEGAL STANDARD ............................................................................... 5

IV.     BACKGRID HAS ALLEGED VOLITIONAL CONDUCT SUFFICIENT TO
        SUPPORT A CLAIM FOR DIRECT INFRINGEMENT ............................ 6

V.      BACKGRID HAS ALLEGED INDIRECT INFRINGEMENT ..................... 9
        A.      Backgrid Has Properly Alleged Underlying Direct Infringement by Third-
                Party Users ................................................................................ 9
        B.      Backgrid Has Properly Alleged Contributory Infringement ....... 10
                1.      Twitter had Knowledge of Infringement ....................... 10
                2.      Twitter Materially Contributed to the Infringement ...... 13
                3.      Backgrid Has Adequately Pleaded that Twitter Induced
                        Infringement ................................................................ 13
        C.      Backgrid Has Sufficiently Alleged Vicarious ......................... 14
        Infringement .......................................................................................... 14
                1.      Control Over Infringing Conduct ................................ 14
                2.      Financial Benefit ......................................................... 15

VI.     BACKGRID'S CLAIM FOR DECLARATORY RELIEF IS PROPER ......... 17
        A.      The Court has Jurisdiction to Decide Backgrid's Declaratory Relief Claim
                ................................................................................................ 17
        B.      The Declaratory Relief Claim Is Proper .................................. 18

VII.    SHOULD THE COURT GRANT THIS MOTION, BACKGRID
        RESPECTFULLY REQUESTS THAT THE COURT GRANT BACKGRID
        LEAVE TO AMEND ............................................................................. 19

VIII.   CONCLUSION ....................................................................................... 20

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adobe Sys., Inc. v. Canus Prods. Inc.*,
    173 F.Supp.2d 1044, 1049 (C.D. Cal. 2001) ...................................................... 13

*Adobe Sys. v. Blue Source Grp.*,
    125 F.Supp.3d 945 (N.D. Cal. 2015) .................................................................... 6

*American Broadcasting Co. v. Aereo*,
    573 U.S. 431 (2014) .............................................................................................. 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. 5

*Cook v. Meta Platforms Inc.*,
    No. 4:22-cv-02485-YGR (Dkt. 40) (N.D. Cal. Jan. 4, 2023) ........................... 15

*Disney Enters., Inc. v. VidAngel, Inc.*,
    cv16-04109 AB (plax), 2019 WL 13020442 (C.D. Cal. May 1, 2019) ............. 10

*Divino Grp. v. Google LLC*,
    2021 WL 51715 (N.D. Cal. Jan. 6, 2021) .......................................................... 19

*Dunham v. Lei*,
    No. CV 20-3716-DMG, 2021 WL 4595808 (C.D. Cal. June 7, 2021) ........ 10, 11

*Educ. Testing Serv. v. Simon*,
    95 F.Supp.2d 1081 (C.D. Cal. 1999) .................................................................... 6

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ...................................................................... 10, 16

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ................................................................................ 6

*Greg Young Publishing, Inc. v. Zazzle, Inc.*,
    2:16-cv-04587-SVW-KS, 2017 WL 2729584 (C.D. Cal. May 1, 2017) ........... 11

*Hero Nutritionals, Inc. v. Vitastix, Inc.*,
    SACV 09-00927 DMG (mlgx), 2010 WL 11580048, at * 2 (C.D. Cal.
    Apr. 23, 2010) ................................................................................. 17, 19

*Io Grp., Inc. v. Veoh Networks, Inc.*,
    586 F.Supp.2d 1132 (N.D. Cal. 2008) ............................................... 15

*Johnson v. Mammoth Recreations*,
    975 F.2d 604 (9th Cir. 1992) ............................................................. 19

*Keck v. Alibaba.com Hong Kong Ltd.*,
    369 F.Supp.3d 932 (N.D. Cal. 2019) ................................................. 14

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
    591 F. Supp. 2d 1098 (N.D. Cal. 2008) ............................................. 12

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ..................... 17

*MGM Studios Inc. v. Grokster, Ltd*,
    545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) ............ 1, 13

*Newman v. Google LLC*,
    2021 WL 2633423 (N.D. Cal. June 25, 2021) ................................... 19

*P.H. v. Compton Unified Sch. Dist.*,
    No. ED CV 21:219-DMG, 2021 WL 4902198 (C.D. Cal. July 26,
    2021) ..................................................................................................... 5

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ........................................................... 16

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    167 F.Supp.2d 1114 (C.D. Cal. 2001) ............................................... 10

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ......................................................... 6, 16

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ............................................................. 10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ....................................................... 6, 17

iii

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ............................................................ 5

*Stross v. Meta Platforms, Inc.*,
   2:21-cv-08023-MCS-as, 2022 WL 1843129 (C.D. Cal. Apr. 6, 2022) .............. 8

*Stross v. Twitter*,
   2022 WL 1843142 ................................................................ 8, 12, 13

*Stross v. Twitter, Inc.*,
   No. 2:21-cv-8360-SVW, Dkt. 22 ........................................................ 12

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,
   482 F.3d 1330 (Fed. Cir. 2007)......................................................... 17

*Tur v. YouTube*,
   CV064436 FMC ajwx, 2007 WL 1893635, at *3 (C.D. Cal. 2007) ................. 15

*UMG Recordings, Inc. v. Mahakkapong*,
   No. CV 14–07229 DMG (JEM), 2015 WL 12803768 (C.D. Cal. Feb.
   9, 2015) ............................................................................... 12

*UMG Recordings, Inc. v. Shelter Cap. Partners*,
   718 F.3d 1006 (9th Cir. 2013) ......................................................... 15

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ........................................................... 5

*Veoh Networks v. UMG Recordings, Inc.*,
   522 F.Supp.2d 1265 (S.D. Cal. 2007).................................................. 18

*VHT, Inc. v. Zillow Grp.*,
   918 F.3d 723 (9th Cir. 2019) ......................................................... 6, 7

*Williams v. Gaye*,
   895 F.3d 1106 (9th Cir. 2018) ........................................................ 14

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*,
   --- F. Supp.3d ----, 2020 WL 13734708 (N.D. Cal. Aug. 17, 2020)............... 7, 8

**Statutes**

17 U.S.C. § 501 ............................................................................ 8

17 U.S.C. § 512 ................................................................... *passim*

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

Communications Decency Act..................................................................... 19

Copyright Act.......................................................................................... 8

Digital Millennium Copyright Act................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12 ......................................................................5, 6, 17

Fed. R. Civ. P. 15 ....................................................................... 19

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

## I.      INTRODUCTION

Plaintiff Backgrid USA Inc. is the world's largest celebrity photograph agency. It depends for its existence on the licensing or sale of its celebrity photographs to major media outlets.  Its existence is jeopardized when its photographs are widely disseminated without license and without consent.

Twitter operates a spectacularly profitable platform that generates enormous revenue through clicks, views, "tweets," and shares. The more data a tweet generates, the more money Twitter earns as the traffic generated translates into more sponsor dollars and even more data to sell. The tweets that incorporate unlawfully obtained copyrighted content generate enormous amounts of data Twitter can monetize and negotiate great sponsor payments.

In this regard, Twitter's service is not unlike the file-sharing service condemned in *MGM Studios Inc. v. Grokster, Ltd,* 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005).  Although the Grokster service had non-infringing uses, Grokster's business model depended on user infringements for its success.  Similarly, as a user's tweet attracts traffic because Twitter audience groups wish to see the infringing content associated with it, Twitter assigns the user's post a higher position in the audience groups' Twitter feed. Where the post falls in an audience group's Twitter feed is controlled by Twitter and Twitter alone.  Twitter targets advertisements to specific audience groups, thereby generating greater advertising revenues and data monetization for itself.  Twitter's profits are attributable in no small measure to the infringing content it makes available to the public.  For that reason, Twitter even sends e-mail messages to user groups apprising them of tweets they might not otherwise overlook.  *See* First Amended Complaint ("FAC"), ¶ 10.  Twitter is actively involved in the infringements reproduced and displayed on its platform directly, contributorily, and vicariously.  FAC, ¶¶ 30-38.

Twitter seeks unavailingly to portray itself as a passive internet service provider ("ISP") whose activities qualify for safe-harbor protection under the Digital

1

Millennium Copyright Act ("DMCA"). While Twitter contends that Backgrid has "anticipated" that it might assert compliance with the DMCA's safe-harbor provision as an affirmative defense, that is of no moment.  Backgrid has unsuccessfully relied on Twitter's own terms of service that claim Twitter both has and implements a reasonable repeat infringer policy. If that were the case, Twitter might avail itself of the safe harbor, but it is not true.  After sending over 6,700 DMCA takedown notices for Backgrid's works, Twitter failed to take down even one posting or user account.

Backgrid has sufficiently pleaded its claim for direct, contributory, and vicarious copyright infringement, as well as its declaratory judgment claim.  It respectfully requests that the Court deny Twitter's motion to dismiss in full.

## II.   STATEMENT OF FACTS

### A.   Plaintiff Backgrid and Its Photographs

Backgrid is the world's premier celebrity-related photograph agency and provides highly sought-after images of celebrities to top news and lifestyle outlets. Its photographs increase the sales of its customers' magazines and newspapers and increase their website traffic and website viewer engagement.  FAC, ¶ 6.

Backgrid's photographs are regularly licensed by *People* magazine, the *Huffington Post*, the *Daily Mail, TMZ, US Weekly, Harper's Bazaar, Entertainment Tonight, Vogue, Elle* magazine, and many other publications. *Id.* Backgrid owns all rights to its Celebrity Photographs, each of which was timely registered with the United States Copyright Office. Included in the complaint as an attachment are the copyright registrations numbers associated with the works then-identified as infringed by Twitter.  *Id.,* ¶ 7, Ex. A.  Due to Defendant's continuing infringements and refusal to adopt and reasonably implement a Digital Millennium Copyright Act ("DMCA") repeat infringer policy, the number of timely registered infringements on its Twitter platform and the damages for which Defendant is responsible is continually increasing.

### B.     Twitter and Its Infringement of Backgrid's Copyrights

Twitter is a platform that "touts itself as a 'global platform' [] that 'help[s] people discover what's happening through text, images, on demand and live video." *Id.,* ¶ 9. It is one of the top ranked websites globally, ranked number five in the world and averaging 7.1 billion visits per month. *Id.*

Twitter monetizes its platform by enabling advertisers to promote their brands, products, and services through the Twitter platform that then permits the targeting of specific audience members based on the accounts they follow and the actions they have taken on the Twitter platform. *Id.,* ¶ 10. The more attractive and compelling a tweet, the more Twitter can monetize it. Every upload, click, and view yields data that can be and is monetized, meaning that Twitter monetizes each photo uploaded on its platform, including Backgrid's Celebrity Photographs. It does so by displaying advertisements calculated to interest a given audience. Twitter charges advertisers more based on the amount of interaction the advertisement-tweet generates. *Id.*

To keep its users engaged while promoting the advertisements on which much of its revenue depends, Twitter also sends e-mail messages to its users providing links to tweets that they might not otherwise see. *Id.,* ¶ 10.  The links provided are to tweets from accounts that the targeted users do not "follow." By doing so, Twitter increases the number of views those advertisements receive, thereby increasing its own advertising revenue. *Id.*

Moreover, Twitter promotes tweets based on subscription models, such as the Twitter Blue subscription, pursuant to which verified users pay a monthly fee to have their tweets promoted on others' tweet-feeds.  When a Twitter user uploads a photo, Twitter selects, orders, and/or arranges its content to display that content to other Twitter users, including content from Twitter accounts that are not among those "followed" by the viewing user. *Id.,* ¶ 11.  Further, Twitter stores copies of the photos on its servers without Backgrid's consent. *Id.,* ¶ 34.

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

Twitter claims to have DMCA compliant take-down policies set forth in its website's Terms of Service. Twitter's "Copyright Policy" provides that copyright owners may send DMCA takedown notices. Its policy represents that "if multiple copyright complaints are received about an account, or other evidence suggests a pattern of repeat infringement, Twitter may suspend that account in accordance with our Repeat Infringer Policy." Based thereon, it claims that the DMCA's safe-harbor protection for ISPs with DMCA compliant take-down policies shields it from liability for the massive number of infringements it contributes to and engages in daily. But such lip service compliance with the DMCA is merely a fig leaf to hide its systematic abuse of the rights of photograph copyright holders and their enormous profits derived from such infringement. *Id.,* ¶ 13.

A threshold requirement for DMCA safe harbor protection is that the ISP have "adopted *and reasonably implemented* … a policy that provides for the termination in appropriate circumstances of subscribers and account holders … who are repeat infringers." 17 U.S.C. § 512(i)(1)(A) (emphasis added). Twitter's policy is not reasonably implemented. Although its "Copyright Policy" provides that copyright owners may send a DMCA takedown notice and further provides that "If multiple copyright complaints are received about an account, or other evidence suggests a pattern of repeat infringement, Twitter may suspend that account in accordance with our Repeat Infringer Policy," it does not do so. *Id.,* ¶ 15.

Twitter's purported policy is honored in the breach. Despite Backgrid sending more than 6,700 DMCA takedown notices, not a single work was taken down and not a single repeat infringer was suspended. Each notice complied with 17 U.S.C. 512(c)(3), giving Twitter knowledge of specific infringing material, including by providing a link to where the infringement was stored and where it was displayed. *Id.,* ¶ 18. Despite having such knowledge, however, Twitter refuses to take simple measures to prevent further damage, such as disabling the infringement and deleting it

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

from its servers, as well as suspending accounts that have repeatedly infringed copyrights belonging to Backgrid.  *Id.*

Twitter treats Backgrid's DMCA notices differently than notices from other parties, demonstrating that it has not implemented a reasonable DMCA policy. *Id.* Moreover, it feigns ignorance of the contents of Backgrid's DMCA notices, thus demonstrating willful blindness towards the infringements of Backgrid's works, by not taking the work down.  *Id.,* ¶ 19.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. However, a court may grant dismissal only when the plaintiff has not asserted a cognizable legal theory or alleged sufficient facts to support one. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in a complaint, and documents subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of a complaint for lack of subject matter jurisdiction. *P.H. v. Compton Unified Sch. Dist.,* No. ED CV 21:219-DMG (JEMx), 2021 WL 4902198, at *1 (C.D.

5

Cal. July 26, 2021).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Twitter's arguments constitute a facial attack.

## IV.   BACKGRID HAS ALLEGED VOLITIONAL CONDUCT SUFFICIENT TO SUPPORT A CLAIM FOR DIRECT INFRINGEMENT

To state a claim for direct copyright infringement, a copyright owner must show "volitional conduct," *i.e.*, causation by the defendant. *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 666 (9th Cir. 2017). Although volition is a requirement, intent is not. Copyright infringement is a strict liability tort.  *Educ. Testing Serv. v. Simon,* 95 F.Supp.2d 1081, 1987 (C.D. Cal. 1999). Therefore, it is not required that a plaintiff plead an "act of willing or choosing" or an "act of deciding."  Volition "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability." *VHT, Inc. v. Zillow Grp.,* 918 F.3d 723, 731 (9th Cir. 2019) (*quoting Giganews,* 847 F.3d at 666).[1]  Courts look at the "distinction between active and passive participation" to determine whether volition exists.  *VHT,* 918 F.3d at 732 (volition requires "active involve[ment]").

---

[1] An infringer need not be the *sole* infringer to be the proximate cause of the infringement. Twitter and its users can be simultaneous direct infringers. "when a copyright is infringed, all infringers are jointly and severally liable for plaintiff['s] actual damages." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985); *Adobe Sys. v. Blue Source Grp.,* 125 F.Supp.3d 945, 973 (N.D. Cal. 2015). To bake a cake, one needs both flour and baking powder, among other ingredients. Flour and baking powder are each a "proximate cause" of the cake's creation; without baking powder it will not rise; without flour it will not have volume.

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

Backgrid did not allege that Twitter's actions "were akin to 'passively storing material at the direction of the users in order to make that material available to other users upon request," as Twitter falsely claims. Twitter's Motion to Dismiss, ECF No. 26 ("Motion") at 9.    Rather, Backgrid alleged substantial, active involvement by Twitter to promote infringements and monetize them.  Among other things, it alleged that, "[o]nce a Twitter user uploads a photo, Twitter selects, orders and/or arranges content to display to other Twitter users, including content from Twitter accounts that are not among those 'followed' by the viewing user." FAC, ¶ 11.  In other words, Twitter "displays other tweets in a feed tailored to a particular use" and even supplies links to those tweets in e-mail messages sent to users who would not otherwise "follow" or see those tweets.  FAC ¶ 35. Twitter decides where and when to publicly display, distribute, and reproduce the infringements and even "promot[ed] tweets based on subscription models" FAC ¶ 34.  Its acts are akin to the acts performed by Zillow that **were not** reviewed on appeal. Those acts were sufficient for Zillow to be found liable for the direct infringement of the plaintiff's works. *Zillow,* 918 F.3d at 736 (Zillow did not appeal a finding of direct infringement against it when Zillow "moderators selected and tagged [the photos] for searchable functionality").  *See also Williams-Sonoma, Inc. v. Amazon.com, Inc.,* --- F. Supp.3d ---- , 2020 WL 13734708, *6 (N.D. Cal. Aug. 17, 2020) (acknowledging that in *Zillow,* "[t]he Ninth Circuit approvingly cited the district court's reasoning "that Zillow's moderation efforts, which rendered those images searchable, proximately caused the [infringement]." *Id.* "Put differently," the Ninth Circuit explained that the "active conduct by Zillow met the volitional-conduct requirement for direct infringement").

Twitter admonishes Backgrid for its purported failure to "specify whether Twitter actively performs these acts, or whether the conduct stems from automated functionality." Motion at 9.  At this early, pre-discovery stage Backgrid should not be barred from bringing its direct infringement claim when it does not have the benefit of conducting discovery on Twitter's involvement.

Moreover, Supreme Court precedent does not support the notion that non-human acts preclude a finding of volition. Afterall, in *American Broadcasting Co. v. Aereo,* 573 U.S. 431 (2014), the Supreme Court held that Aereo directly infringed ABC's works even though its conduct resulted from automatic functionality. *Id.* at 451. Nor does the text of the Copyright Act support the idea that volition can result only from direct human activity. *See* 17 U.S.C. § 501(a) ("*Anyone* who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright.") Especially in this age of artificial intelligence it would be catastrophic to copyright holders to permit infringement so long as it was caused by a non-human.

Indeed, using an algorithm that proximately results in infringement does not avoid copyright infringement liability. *Stross v. Meta Platforms, Inc.,* 2:21-cv-08023-MCS-as, 2022 WL 1843129 (C.D. Cal. Apr. 6, 2022). In *Stross,* Facebook argued that the process through which items appeared on a user's news feed resulted from the use of an algorithm and was therefore "automated," not volitional. The court disagreed. "There is no basis in the law to conclude that active management of a website, which would constitute volitional conduct if performed by a human, fails to meet that element because an algorithm designed by a human engineer manages the website instead." *Id.* at *3.[2]

In *Williams-Sonoma,* Amazon disputed the allegations of direct infringement of the plaintiff's photographs. The plaintiff had alleged that Amazon "through its algorithms, selects which product image, along other elements, is more likely to make the sale and displays the image of the public listing page for the product" and that its algorithm "us[es] multi-factor criteria that Amazon employs to boost internet traffic and promote sales." 2020 WL 13734708, at *6.

---

[2] Twitter relies on *Stross v. Twitter,* 2022 WL 1843142, to support its claim that direct infringement is not alleged here. The *Stross* complaint and Backgrid's complaint contain different factual allegations and the Court should make its own independent determination if the allegations here are sufficient.

8

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

Similarly, Twitter, without any direction from its users, "selects, orders and/or arranges content to display to other Twitter users, including content from Twitter accounts that are not among those 'followed' by the viewing user." FAC, ¶ 11. Without any direction from the users, it, alone decided to link to certain infringing tweets in email messages sent to other users who would not otherwise "follow" or see the infringing tweet, and it, and it alone, "promotes tweets based on subscription models" (FAC ¶ 34), much like Amazon promoted photographs based on what its algorithm concluded would be monetized best.  Moreover, it, alone, "choose[s] and arrange[s] infringing content, promoting tweets based on subscription models, such as the Blue Subscription, in which verified users pay a monthly fee to have their tweets promoted on others' tweet-feeds, and continuing to store copies of the photos on Defendant's servers without Backgrid's consent." FAC, ¶ 34.

## V.     BACKGRID HAS ALLEGED INDIRECT INFRINGEMENT

### A.     Backgrid Has Properly Alleged Underlying Direct Infringement by Third-Party Users

Twitter contends that Backgrid has not alleged "specific instances of direct infringement by any third party []."  Not so. Exhibit B, attached to the FAC, shows thousands of screenshots of the infringements.  The screen shots also show the Twitter user who uploaded each work. FAC Ex. B, (ECF. 23-2 to 23-31) (Exhibit B was so large it required 29 ECF events to upload). The text of the FAC also alleges user infringement. *See, e.g.* FAC ¶ 28 ("Defendant's users have reproduced, publicly displayed, and publicly distributed, and continue to reproduce, publicly display and publicly distribute, Celebrity Photographs by making them available for download, copy, and reproduction, together with other photographs that Backgrid either owns or

1   exclusively licenses for distribution, reproduction, public display, and use in creating

2   derivative works.").[3]

3       Moreover, there is no requirement that copyright plaintiffs must specifically

4   identify every work at issue in the litigation. *Disney Enters., Inc. v. VidAngel, Inc.,*

5   cv16-04109 AB (plax), 2019 WL 13020442 (C.D. Cal. May 1, 2019) (deciding that

6   all titles revealed through discovery were at issue at trial even though not alleged in

7   the complaint or identified in discovery responses); *Perfect 10, Inc. v. Cybernet*

8   *Ventures, Inc.,* 167 F.Supp.2d 1114 (C.D. Cal. 2001).  The FAC "identifie[d]

9   copyrights involving [plaintiff's] magazines and identifie[d] ownership of the pictures

10  within the magazines," *id.* at 1121, which the court found sufficient to apprise the

11  defendant of the nature of the claims. The court also acknowledged that greater

12  specificity makes little sense in cases involving allegations of massive infringement.

13      **B.    Backgrid Has Properly Alleged Contributory Infringement**

14      The Ninth Circuit defines a contributory infringer as one who, "(1) has

15  knowledge of another's infringement and (2) either (a) materially contributes to or (b)

16  induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788,

17  795 (9th Cir. 2007). The knowledge requirement for contributory infringement is

18  satisfied if the defendant had "actual knowledge" of or "reason to know of direct

19  infringement." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

20      **1.    Twitter had Knowledge of Infringement**

21      Twitter concedes that compliant DMCA Notices are sufficient to give a

22  defendant knowledge for purposes of contributory infringement. (Motion 11:26-

23

24  _____

25  [3] Even though Backgrid specifically pleaded the works and attached examples of
    infringements, general allegations that users engaged in direct infringement is enough. *See*
26  *Dunham v. Lei,* no.  cv 20-3716 DMG-MAAx, 2021 WL 4595808, at * 6 (C.D. Cal. June 7,
    2021) (citing *Fonovisa v. Napster, Inc.,* No. CV 01-02669, 2002 WL 398676, at *4 (N.D.
27  Cal. Jan, 28, 2002) for the proposition that it is sufficient to allege third party direct
    infringement based on general allegations that users of the defendant's software uploaded
28  specific protected works to it).

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

1    12:02.) Backgrid alleged that it provided compliant DMCA notices, which is

2    sufficient to provide Twitter notice; the discussion should end there. (¶ 18.) [4]

3        The heightened pleading standard championed by Twitter, akin to Rule 9, is not

4    supported by law.  Twitter has cited to no case requiring a plaintiff to allege the "dates

5    of the notices or the locations (urls) of the infringing content it allegedly requested to

6    be removed, or even a description of the content" it claims a properly pleaded

7    complaint must contain. Motion at 12.  Such facts are not required to be pleaded.[5] [6]

8        This Court denied a motion to dismiss a contributory copyright infringement

9    claim in *Dunham v. Lei,* No. CV 20-3716-DMG (MAAx), 2021 WL 4595808 (C.D.

10   Cal. June 7, 2021), even though the plaintiff did not even allege that his DMCA

11   notices were "compliant" and failed to attach the DMCA notices to the complaint.

12   *See Dunham v. Lei,* No. CV 20-3716-DMG (MAAx) (Apr. 23, 2020) (complaint).

13   The Court explained that the plaintiff had alleged that the defendant had actual

14   knowledge of or reason to know of the direct infringement of third party infringement

15   based on conduct "which can be equated to a game of 'whack-a-mole'": [the plaintiff]

16   sends DMCA notices to [the] Defendants identifying infringing products [], [the]

17   defendants take those products down, then the same and new products using [the

18   plaintiff's] Intellectual Property again become available on those websites." *Id.* at *

19   6.

20       Moreover, Twitter materially misrepresents Backgrid's pleading when it states

21   that apart from the representative examples in the complaint, "Backgrid offers no

22   _____

23   [4] Twitter also relies on *Greg Young Publishing, Inc. v. Zazzle, Inc.,* 2:16-cv-04587-SVW-
24   KS, 2017 WL 2729584 (C.D. Cal. May 1, 2017) for its position that the DMCA notice need
     be compliant to provide notice. That case did not involve contributory infringement.
25   [5] Twitter complains that the notices were not attached. Had Backgrid attached 6,700 DMCA
     notices, presumably Twitter would complain that doing that would be insufficient, just as it
26   complained about Backgrid's purported failure to identity the users when they were
     identified in Exhibit B.
27   [6] Imagine if those facts were. In addition to Twitter's argument that each infringement must
     be identified by attaching thousands of screenshots to the complaint, Twitter appears to be
28   asking that each DMCA notice and each infringement be pleaded individually in the
     complaint. That would be a poor use of the Court's and the parties' resources.

11

facts at all about its notice." Motion, 12:09.  In fact, Backgrid alleges that it sent "more than 6,700 DMCA takedown notices" (¶ 18) and that each notice "complied with 17 U.S.C. 512(c)(3), giving Twitter knowledge of specific infringing material, including by providing a link to where the infringement was stored and where it was displayed." *Id.*  That is sufficient to allege knowledge, especially inasmuch as sending a DMCA notice is not required but is sufficient to find knowledge. For example, a cease-and-desist letter, which might not otherwise contain some of the information in a proper DMCA notice, could create sufficient knowledge under a contributory infringement theory. *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,* 591 F. Supp. 2d 1098, 1106-08 (N.D. Cal. 2008) (finding that letters informing defendants of infringing websites, among other evidence, could lead a reasonable jury to find that defendants had actual knowledge of direct infringement).  Although there is no requirement to plead the use of compliant DMCA notices, Backgrid has done so anyway.[7]

Additionally, Twitter ignores Backgrid's allegations of willful blindness, which are sufficient by themselves to adequately plead "knowledge." *See UMG Recordings, Inc. v. Mahakkapong,* No. CV 14–07229 DMG (JEM), 2015 WL 12803768, at * 3 (C.D. Cal. Feb. 9, 2015) (quoting *Ludvarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) ("willful blindness" can establish the knowledge element for contributory liability)).  Backgrid alleged that "[Twitter] feign[s] ignorance of the content of Backgrid's DMCA notices, thus acting with willful blindness toward the infringement of Backgrid's works [when they refuse to take the works down]." (FAC

---

[7] Twitter cites to *Stross*, 2022 WL 1843142, at *5 "for sake of comparison," but that order did not address and did not decide whether allegations regarding the contents of the DMCA notices were necessary. In fact, the First Amended Complaint in that case, cited to by Twitter shows the opposite. The allegations did not include factual detail regarding the contents of the DMCA Notices. *See Stross v. Twitter, Inc.,* No. 2:21-cv-8360-SVW, Dkt. 22 (¶ 55) (stating that the notice included (1) a table of each Subject Work matched to screen captures of the corresponding Infringing Use(s) and their respective URLS, and (20 an additional list of URLS [] in clickable form." Stross had not alleged each element of the notification.), *cf* 17 U.S.C. 512(c)(3).  Apparently, Twitter attached some of the correspondence to its motion in that case. *Stross*, 2022 WL 1843142, at *4, n.3.

¶19) Further, "[o]ther parties send DMCA notices similar to those sent by Backgrid, to which Twitter responds by taking the work down. However, with Backgrid's notices, Twitter requires extrajudicial information beyond that required by the DMCA." *Id.* "Twitter treats Backgrid differently than smaller content providers because Backgrid is a source of a substantial amount of valuable, celebrity content." *Id.*

### 2.    Twitter Materially Contributed to the Infringement

To allege material contribution, Backgrid must allege that Twitter could have taken "simple measures to prevent further damage to copyrighted works yet continues to provide access to infringing works." *Stross,* 2022 WL 1843142, at * 4. Twitter contends that Backgrid has not properly alleged material contribution because "Backgrid has not provided sufficient allegations to demonstrate that it adequately informed Twitter of the alleged infringement." Motion at 13.  In doing so, Twitter conflates the "knowledge" requirement with the "material contribution prong" and then fails to show that the existence of a material contribution has not been pleaded. *See Stross,* 2022 WL 1843142, at *4.  In fact, Backgrid has alleged facts sufficient to support contributory infringement based on material contribution, but Twitter has ignored them.  *See, e.g.* FAC ¶ 18 ("Despite having such knowledge [from the 6,700 takedown notices], however, Twitter failed to take simple measures to prevent further damage, such as disabling the infringement and deleting it from its servers, as well as suspending the infringing accounts which repeatedly infringed the copyrights belonging to Backgrid.").

### 3.    Backgrid Has Adequately Pleaded that Twitter Induced Infringement

The "inducement" element is satisfied when a defendant intentionally induces or encourages direct infringement. *See Grokster,* 545 U.S. at 942.  Twitter has induced infringement by providing a platform that encourages its users to "upload and edit photographs found on the Internet, failing to advise users that civil and criminal

13

penalties attach to the unauthorized copying, posting, and public display of the copyrighted photographs, and by creating a system and practice of removing metadata from each unlawfully posted and displayed Celebrity Photograph." FAC ¶ 35. This system induces and encourages infringement, especially when it automatically strips metadata that includes authorship and ownership information. There is no legitimate purpose in stripping metadata except to induce infringement.

### C.     Backgrid Has Sufficiently Alleged Vicarious Infringement

To allege vicarious copyright infringement liability, a plaintiff must plead: (1) the defendant exercised the requisite control over the direct infringer; and (2) the defendant derived a direct financial benefit from the direct infringement. *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F.Supp.3d 932, 935 (N.D. Cal. 2019). "[T]o escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent. Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to liability." *Id.* (*citing A&M Records v. Napster, Inc.*, 239 F.3d 1004 at 1023 (9thCir. 2001)). A defendant's knowledge of the infringement, or lack thereof, is irrelevant to a claim for vicarious liability. *Adobe Sys., Inc. v. Canus Prods.*, Inc., 173 F.Supp.2d 1044, 1049 (C.D. Cal. 2001).  Vicarious liability is an "outgrowth" of the common law doctrine of *respondeat superior*, which holds the employer liable for the acts of its agents without regard to whether the employer knew of those acts.  *Id.*

### 1.     Control Over Infringing Conduct

"A vicarious infringer 'exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'" *Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018) (*quoting Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1173 (9th Cir. 2007)). Among other things, Backgrid alleges that Twitter has the legal right to stop and limit directly infringing conduct, as well as the practical ability to do so, as shown by its

14

willingness and ability to take down infringements identified in DMCA notices sent by other parties.  (FAC ¶ 35.) In addition, Backgrid pleaded Twitter's ability to republish the infringements, as described by Paragraphs 10-12, and alleged control over the Twitter platform which hosts, displays, and republishes the infringed works.

Twitter contends that the right and ability to supervise the infringing conduct "presupposes some antecedent ability to limit or filter copyrighted material," citing to *Tur v. YouTube,* CV064436 FMC ajwx, 2007 WL 1893635, at *3 (C.D. Cal. 2007), and *Io Grp., Inc. v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1151 (N.D. Cal. 2008). Motion at 15:14-16. But that language came from a district court case addressing whether YouTube's conduct fell under Section 512(c)(1)(B), which also uses "right and ability to control" language.

Since those cases were decided, the Ninth Circuit has clarified that the "right and ability to control" language as used in Section 512 does not necessarily have the same meaning as when it is used in the context of vicarious infringement. While the court "[o]rdinarily presume[s] that similar language in similar statutes should be interpreted similarly," the Ninth Circuit held that Section 512's 'control' analysis is not the same as the vicarious liability "right to supervise" analysis. *UMG Recordings, Inc. v. Shelter Cap. Partners,* 718 F.3d 1006, 1016 (9th Cir. 2013) ("In light of the DMCA's language, structure, purpose and legislative history, we are compelled to reject UMG's argument that the district court should have employed *Napster's* vicarious liability standard to evaluate whether Veoh had sufficient 'right and ability to control' infringing activity under  § 512(c)."); *accord Cook v. Meta Platforms Inc.,* No. 4:22-cv-02485-YGR, (Dkt. 40) (N.D. Cal. Jan. 4, 2023) (finding that the plaintiff sufficiently alleged Meta's right and ability to control infringing advertisements on the Facebook platform).

### 2.    Financial Benefit

"The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a

15

defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Giganews,* 847 F.3d at 673 (internal quotation and citation omitted). "There is no requirement that the draw be substantial." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).  Financial benefit can exist "where the availability of infringing material acts as a draw for customers." *Id.* at 1078; *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117 (9th Cir. 2007).

Here, Backgrid pleaded that, "[o]n information and belief, the Celebrity Photographs were displayed in tweet-feeds, along with advertisements that targeted particular groups of Twitter users. To keep its users engaged while promoting the advertisements on which its revenue depends, Twitter also sends emails to its users with links to tweets that they might not otherwise see. Twitter thus provides links to tweets from accounts that are not 'followed' by the targeted user. By doing so, Twitter increases the number of views those advertisements receive, thereby increasing its own advertising revenue." FAC, ¶ 35.

It is irrelevant that Backgrid has not included in the FAC specific examples showing a "causal relationship between the infringing activity and any financial benefit." Financial benefit is sufficiently alleged by, among other things, the allegations that Twitter monetizes its platform to enable advertisers to promote their brands, products and services through the Twitter platform that uses data to target specific audience members by the accounts they follow and the actions they have taken. The data it collects from its users is sold to their clients for commercial use and is monetized, which means each photo is monetized, and "the Celebrity Photographs were displayed in tweet-feeds, along with advertisements that targeted particular groups of Twitter users" and the more traffic generated by the Tweet, the more Twitter generates income. (FAC, ¶ 10.) As described herein, Backgrid has pleaded the specifics showing the ways in which Twitter monetizes the Celebrity Photographs. It need not provide specific examples.

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**

## VI. BACKGRID'S CLAIM FOR DECLARATORY RELIEF IS PROPER

### A. The Court has Jurisdiction to Decide Backgrid's Declaratory Relief Claim[8]

When determining whether or not a controversy exists, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007). "An 'actual controversy' requires only that a dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp*., 482 F.3d 1330, 1339 (Fed. Cir. 2007) (emphasis added).

The controversy between Backgrid and Twitter is "definite and concrete." The FAC alleges that "Twitter claims to have DMCA compliant take-down policies set forth in its Terms of Service. Based thereon, it claims that the DMCA safe harbor protection for ISPs with DMCA compliant take down policies shields it from liability for the massive number of infringements it contributes to and engages in daily." (FAC, ¶ 13.) And its own "Copyright Policy" provides that copyright owners may send a DMCA takedown notice and that 'If multiple copyright complaints are received about an account, or other evidence suggests a pattern of repeat infringement, Twitter may suspend the account in accordance with out Repeat Infringer Policy." (FAC, ¶ 15.) It also alleges that it sent 6,700 takedown notices and

---

[8] Twitter noticed this motion under 12(b)(1) and 12(b)(6). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Hero Nutritionals, Inc. v. Vitastix, Inc.,* SACV 09-00927 DMG (mlgx), 2010 WL 11580048, at * 2 (C.D. Cal. Apr. 23, 2010).  *See also Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction").   Twitter has not made a factual attack on jurisdiction nor has it attached any evidence allowing the Court to look beyond the four corners of the FAC.

17

that Twitter failed to take simple measures to take down the photos identified in the notices. (FAC, ¶ 18.) It did not take down even one infringement nor did it terminate a single user even though its terms of service purportedly comply with the DMCA. *Id.* A definite and concrete dispute exists as to whether Twitter's policy complies with the DMCA.

Twitter's reliance on *Veoh Networks v. UMG Recordings, Inc.*, 522 F.Supp.2d 1265 (S.D. Cal. 2007), is misplaced. The plaintiff brought a declaratory judgment action against content holders seeking a declaration of non-infringement of the content holder's copyrights, "primarily under Section 512(c)." *Id.* at 1267. The court expressed concern that because the "Plaintiff does not reference any specific copyright, ***even by way of example***, the relief requested would necessarily take the form of an advisory opinion." (Emphasis added). *Id.* at 1269-70. The plaintiff simply wanted "blanket validation of the ongoing legality of their business model." *Id.* Here, Backgrid is not seeking blanket *validation*, but rather alleges that as a threshold matter Twitter is not entitled to the safe harbor: Because Twitter does not satisfy the threshold requirements of 512(i), it does not have the safe harbor.

## B.  The Declaratory Relief Claim Is Proper

Twitter's argument that the declaratory relief claim is anticipatory and premature because it has not yet alleged the DMCA as a defense ignores that an actual case or controversy already exists with respect to whether a policy that Twitter contends it has, that has been relied upon by both parties, is valid or not.[9]  As alleged in the complaint, this claim is based on Twitter's "failure and refusal to apply their own Copyright Policy to their users." FAC, ¶ 36; *see* also FAC, ¶ 44. *See* Section VI(a), incorporated herein by reference.

---

[9] Twitter also argues that the declaratory judgment claims are "redundant" of Twitter's anticipated defense (Motion at 21:20), although it does not explain how a claim can be both premature and redundant.

It makes no difference whether the defense has yet been raised. Backgrid has been treating Twitter as an ISP, sending compliant DMCA notices to Twitter's purported DMCA agent, with the expectation that the material complained of would be taken down as contemplated by Section 512. Whether it is articulated as a defense or not, Backgrid has actually been tirelessly going through this process to vindicate its rights.

Twitter contends it has a DMCA policy that it enforces with respect to all copyright holders. Should that policy be deemed invalid, the effect would be to invalidate it as to all similarly situated plaintiffs, not just as to Backgrid.[10] Much like a declaratory relief claim for invalidity of a patent, Twitter's policy is either valid or not valid. *See Hero Nutritionals,* 2010 WL 11580048, at *3. Whether Backgrid articulated in its complaint that no safe harbor exists as to the world is immaterial.

## VII.   SHOULD THE COURT GRANT THIS MOTION, BACKGRID RESPECTFULLY REQUESTS THAT THE COURT GRANT BACKGRID LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading with the court's leave, and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 607 (9th Cir. 1992).

---

[10] Twitter contends that *Divino Grp. v. Google LLC,* 2021 WL 51715 (N.D. Cal. Jan. 6, 2021) is instructive because the plaintiff in that case purportedly "sought a declaration that Section 230 of the Communications Decency Act was unconstitutional." Motion at 20. There, the declaratory relief claim depended on the alleged violation of plaintiff's First Amendment rights, for which plaintiff failed to state a claim in the first instance. *Id.* at *10. Twitter also cites to *Newman v. Google LLC,* 2021 WL 2633423, at *9 (N.D. Cal. June 25, 2021). In *Newman,* the court decided that it would not hear whether Section 230 was constitutional. Like *Divino,* that case is distinguishable because the court had dismissed plaintiff's federal claims and declined to exercise supplemental jurisdiction over the plaintiffs' state law claims, making it "inappropriate to adjudicate the constitutionality of Section 230 [] because such adjudication is avoidable and unnecessary to decide Defendants' motion to dismiss." *Newman,* 2021 WL 2633423, at * 14.

19

1   Should the Court find dismissal of any of Backgrid's claims proper, Backgrid
2   respectfully requests that it be given leave to amend.

3   **VIII. CONCLUSION**

4   Backgrid respectfully requests that the Court deny Twitter's motion to dismiss
5   in full.

6

7   Dated: June 16, 2023                          **ONE LLP**

8

9                                                 By:  */s/ Joanna Ardalan*
                                                       Joanna Ardalan
10                                                     Peter R. Afrasiabi
                                                       David W. Quinto
11

12                                                     *Attorneys for Plaintiff,*
                                                       Backgrid USA, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT TWITTER'S MOTION TO DISMISS**