QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Daniel C. Posner (Bar No. 232009)
  danposner@quinnemanuel.com
  Justin C. Griffin (Bar No. 234675)
  justingriffin@quinnemanuel.com
  Laurenne M. Babayan (Bar No. 348075)
  laurennebabayan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendant Twitter, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BACKGRID USA, INC., a California corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>TWITTER, INC., a Delaware corporation and Does 1-10, inclusive,<br><br>                Defendants. | Case No. 2:22-cv-09462<br><br>**DEFENDANT TWITTER'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:  July 21, 2023<br>Time:  8:30 a.m.<br>Judge:  The Honorable Dolly M. Gee<br>Courtroom: 8C |

1
2

# **TABLE OF CONTENTS**

**Page**

3  INTRODUCTION ................................................................................................. 1

4  ARGUMENT ....................................................................................................... 2

5  I.  BACKGRID FAILS TO SHOW IT STATED A VALID CLAIM FOR
6     DIRECT COPYRIGHT INFRINGEMENT ........................................... 2

7     A.  Backgrid Fails To Show It Adequately Alleged Volitional
          Conduct ................................................................................... 2

8     B.  Backgrid Fails To Show It Adequately Alleged A Nexus
9         Between Twitter's Alleged Conduct And The Alleged
          Infringements ........................................................................... 5

10 II.  BACKGRID FAILS TO SHOW IT STATED VALID CLAIMS FOR
11      INDIRECT COPYRIGHT INFRINGEMENT ....................................... 7

12     A.  Backgrid Fails To Show It Adequately Alleged Underlying
           Direct Infringement ................................................................. 7

13     B.  Backgrid Fails To Show It Adequately Alleged Contributory
14         Infringement ............................................................................. 8

15     C.  Backgrid Fails To Show It Adequately Alleged Vicarious
           Infringement ........................................................................... 11

16 III.  BACKGRID FAILS TO SHOW IT STATED A VALID CLAIM FOR
17       DECLARATORY RELIEF ................................................................. 13

18 IV.  THE COURT SHOULD NOT ALLOW FURTHER LEAVE TO
         AMEND ............................................................................................... 16

19 CONCLUSION ................................................................................................. 16

20 CERTIFICATE OF COMPLIANCE ................................................................ 18

21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ............................................................................... 11

*American Broadcasting Companies, Inc. v. Aereo, Inc.*,
  573 U.S. 431 (2014) ...................................................................................... 3, 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 3, 7, 9

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
  2022 WL 17578247 (C.D. Cal. Dec. 5 2022)......................................... 3, 6, 9

*Cafasso v. Gen. Dynamics C4 Sys.*,
  637 F.3d 1047 (9th Cir. 2011) ........................................................................ 16

*Cook v. Meta Platforms Inc.*,
  No. 4:22-cv-02485-YGR (Dkt. 40) (N.D. Cal. Jan. 4, 2023)............................ 11

*CoStar Grp., Inv. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ........................................................................... 2

*Divino Grp. LLC v. Google LLC*,
  2021 WL 51715 (N.D. Cal. Jan. 6, 2021) ....................................................... 15

*Dunham v. Lei*,
  2021 WL 4595808 (C.D. Cal. June 7, 2021)...................................................... 9

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) ......................................................................... 9

*Joycette Goodwin v. Walgreens, Co.*,
  2023 WL 4037175 (C.D. Cal. June 14, 2023)................................................... 16

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  591 F. Supp. 2d 1098 (N.D. Cal. 2008)............................................................. 9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*
  545 U.S. 913 (2005) ................................................................................ 10, 11

*Newman v. Google LLC*,
    2021 WL 2633423 (N.D. Cal. June 25, 2021) ..................................................... 15

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ............................................................. 11, 12, 14

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ........................................... 3, 4, 8, 10, 11, 12

*Perfect 10, Inc. v. Visa Intern. Service Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ......................................................................... 10

*Reed v. Nat'l Football League*,
    2015 WL 13344625 (C.D. Cal. Dec. 18, 2015) ................................................. 16

*Rosen v. eBay, Inc.*,
    2018 WL 4808513 (C.D. Cal. Apr. 4, 2018) ...................................................... 5

*Rosen v. Hosting Servs., Inc.*,
    771 F. Supp. 2d 1219 (C.D. Cal. 2010) ............................................................. 8

*Stross v. Meta Platforms, Inc.*,
    2022 WL 1843129 (C.D. Cal. Apr. 6, 2022) ............................................ 6, 7, 13

*Stross v. Twitter, Inc.*,
    2022 WL 1843142 (C.D. Cal. Feb. 28, 2022) ................................ 4, 5, 6, 12, 13

*UMG Recordings, Inc. v. Mahakkapong*,
    2015 WL 12803768 (C.D. Cal. Feb. 9, 2015) ................................................. 10

*UMG Recordings, Inc. v. Shelter Cap. Partners*,
    718 F.3d 1006 (9th Cir. 2013) ...................................................................... 11

*Vander Music v. Azteca Int'l Corp.*,
    2011 WL 13177301 (C.D. Cal. Jan. 21, 2011) ................................................. 12

*Veoh Networks v. UMG Recordings, Inc.*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007) ............................................................ 14

*VHT, Inc. v. Zillow Group, Inc.*,
    918 F.3d 723 (9th Cir. 2019) ................................................................... 2, 3, 4

*Wanxia Liao v. United States*,
    2012 WL 3945772 (N.D. Cal. Apr. 16, 2012) ................................................. 16

*Williams-Sonoma, Inc. v. Amazon.com, Inc.*,
    627 F. Supp. 3d 1072 (N.D. Cal. 2020)...................................................... 7

### **Rules/Statutes**

17 U.S.C. § 512(l)....................................................................................... 14

17 U.S.C. § 512(c)(3)(A).............................................................................. 8

F.R.C.P. Rule 12 ..................................................................................... 3, 16

F.R.C.P. Rule 15(a)(2) ................................................................................ 16

### **Other Authorities**

3 Melville B. Nimmer & David Nimmer,
    Nimmer On Copyright, § 12B.04[B][2] ...................................................... 8

1

# **INTRODUCTION**

2     Despite having two attempts to state valid claims against Twitter, Backgrid fails

3 to show it has done so in its First Amended Complaint ("FAC").  It is undisputed that

4 Twitter itself did not originally select or display any of Backgrid's alleged

5 copyrighted photographs, so that Backgrid has no claim against Twitter for direct

6 infringement on that basis.  Nevertheless, Backgrid strains to state a claim against

7 Twitter for direct infringement based on features Twitter allegedly offers that "select"

8 or "promote" certain popular content on its site.  But Backgrid can point to no

9 allegations showing that Twitter employees engaged in any active, "volitional"

10 conduct that resulted in Backgrid's photographs being selected or promoted in any

11 way.  There is no indication, nor any allegations, that this ever happened, and

12 Backgrid's claim for direct copyright infringement fails.

13     Nor has Backgrid stated valid claims for contributory or vicarious

14 infringement.  It is Backgrid's burden to allege facts showing that Twitter had actual

15 knowledge of the specific acts of infringement Backgrid alleges, yet the most

16 Backgrid has done—and the most it evidently can do—is make the bald, conclusory,

17 and legally insufficient allegation that it sent "compliant" DMCA takedown notices.

18 And Backgrid offers no facts showing that Twitter had the ability to detect the alleged

19 infringements of Backgrid's photographs or that it reaped any direct financial benefit

20 from them.  Both of Backgrid's claims for indirect infringement fail too.

21     Finally, Backgrid admits that its claim for declaratory relief seeks a sweeping

22 judgment that would bar Twitter's anticipated DMCA "safe harbor" defense not

23 only as to Backgrid's infringement claims, but as to any infringement claim by any

24 third party now or in the future.  This absurd claim falls well outside this Court's

25 limited jurisdiction to resolve actual cases or controversies between the parties.  The

26 only explanation for Backgrid's insistence on bringing this claim is that it reflects a

27 tactical decision to increase pressure on Twitter to settle.  But there is no basis for

28 Backgrid to assert such a broad claim, and it too should be dismissed with prejudice.

# ARGUMENT

## I.   BACKGRID FAILS TO SHOW IT STATED A VALID CLAIM FOR DIRECT COPYRIGHT INFRINGEMENT

Nothing in Backgrid's opposition brief ("Opp.") shows that Backgrid sufficiently alleged a claim against Twitter for direct copyright infringement. Backgrid does not contend that Twitter uploaded any of the alleged copyrighted photographs at issue—which would be the classic basis for a claim of direct infringement involving photographs on the Internet.  Backgrid instead points to its allegations that Twitter "selects, orders, and/or arranges content to display to other Twitter users" (Opp. 7 (quoting FAC ¶ 11)), and promotes Tweets through subscription models (*id.* (citing FAC ¶ 34)).  But these allegations are "cast in terms of [Twitter] facilitating or enabling infringement" of photos posted to Twitter by others, and thus present the "type of claim [that] more properly falls in the category of secondary infringement," not direct infringement. *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 733 (9th Cir. 2019) (affirming dismissal of direct infringement claim where, "[a]s in cases involving Internet service providers, Zillow 'affords its users an Internet-based facility on which to post materials, but the materials posted are of a type and kind selected by the user and at a time initiated by the user'" (quoting *CoStar Grp., Inv. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004)).  Backgrid simply has no need, nor any proper basis, to assert a claim for direct infringement, and it fails to defend the sufficiency of its pleading.

### A.   Backgrid Fails To Show It Adequately Alleged Volitional Conduct

Backgrid does not dispute that direct infringement requires "volitional" conduct by the defendant, yet Backgrid points to no allegations in its FAC of Twitter's volitional conduct relating to the copyrighted photographs at issue.  Backgrid contends (Opp. 7) that its allegations of Twitter's "volitional" acts are analogous to those taken by Zillow in the *Zillow* case that were not reviewed on appeal.  Yet the language Backgrid cites from *Zillow* only highlights why its allegations are deficient.

In *Zillow*, the Ninth Circuit explained in dicta that the district court found "substantial evidence that Zillow directly infringed VHT's display rights in 3,921 photos displayed on Digs that Zillow **moderators** selected and tagged for searchable functionality." *Zillow*, 918 F.3d at 736 (emphasis added). Here, by contrast, Backgrid identifies no allegations suggesting that a Twitter "moderator," or anyone akin to such a person, "selects, orders, and/or arranges content to display to other Twitter users." (*See* Opp. 7 (quoting FAC ¶ 11)). Nor can Backgrid point to allegations that anything but Twitter's automated, passive functionality links Tweets in email messages to users or "promotes" Tweets based on subscription models. (*See* FAC ¶ 34.) Backgrid's allegations merely show that Twitter's conduct "amounts to, at most, passive participation in the alleged infringement," which is "not sufficient to cross the volitional-conduct line." *Zillow*, 918 F.3d at 738; *see BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 2022 WL 17578247, at \*3 (C.D. Cal. Dec. 5 2022) (dismissing claim for direct infringement where, "[a]s in *Zillow*, it is the users themselves 'that select and upload every' work") (quoting *id.* at 733).

Lacking any factual basis to allege volitional conduct by Twitter, Backgrid argues, without citation (Opp. 7), that "[a]t this early, pre-discovery stage Backgrid should not be barred from bringing its direct infringement claim when it does not have the benefit of conducting discovery on Twitter's involvement." But Backgrid cannot simply waive off its obligation under Rule 12 to allege "sufficient factual matter" to state a plausible claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the Court should reject Backgrid's attempt to avoid its pleading burden.

To further sidestep the volitional-conduct requirement, Backgrid misplaces reliance (Opp. 8) on the Supreme Court's decision in *American Broadcasting Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 439 (2014), for the proposition that automated functionality can constitute volitional conduct. But as the Ninth Circuit explained in *Giganews*, "the *Aereo* Court did not expressly address the volitional-conduct requirement for direct liability under the Copyright Act." *Perfect 10, Inc. v.*

*Giganews, Inc.*, 847 F.3d 657, 667 (9th Cir. 2017). And more fundamentally, the infringing activity in *Aereo* was very different from the conduct Backgrid alleges here: Aereo offered "broadcast television programming over the Internet, virtually as the programming is being broadcast." *Aereo*, 573 U.S. at 436. "Aereo neither own[ed] the copyright in those works nor [held] a license from the copyright owners to perform those works publicly," yet nonetheless streamed programs to subscribers over the Internet. *Id*. at 436. Backgrid does not allege, or even argue, that Twitter engaged in any sort of direct display of its alleged copyrighted photographs that is similar to the allegations in *Aereo*. Further, in holding that, after *Aereo*, "the distinction between active and passive participation remains a central part of the analysis of an alleged infringement," the Ninth Circuit noted that the Supreme Court "distinguished between an entity that 'engages in activities like Aereo's,' and one that 'merely supplies equipment that allows others' to perform or transmit." *Giganews, Inc.*, 847 F.3d at 667 (quoting *Aereo*, 573 U.S. at 438-49). Backgrid's meager allegations of Twitter's supposed direct infringement fall squarely on the side of a company that "merely" allows its users to "perform and transmit" the content the users post on Twitter, and Backgrid's reliance on *Aereo* is unpersuasive.

Backgrid also fails to distinguish the holding of *Stross v. Twitter, Inc.*, 2022 WL 1843142 (C.D. Cal. Feb. 28, 2022), the most analogous case to the instant one given that Twitter was a defendant in both and much of the same Twitter features and functionality were at issue in both. Backgrid does not even address *Stross*'s holding that direct infringement claims should be dismissed when a "complaint fails to specify whether Twitter's 'conduct' occurs automatically, akin to Zillow's 'behind-the-scenes technical work,' or whether Twitter is actively involved in the alleged infringement." *Id*. at *2 (quoting *Zillow*, 913 F.3d at 738). Confirming that it has no basis to distinguish the holding of *Stross*, Backgrid merely makes the unremarkable point (Opp. 8 n. 2) that the complaint in *Stross* "contain[s] different factual allegations." But Backgrid does not identify what those "different" factual allegations

1  are or why they are relevant, and it fails to show why the reasoning of *Stross* does not

2  support the dismissal of Backgrid's claim for direct infringement.

3        Backgrid likewise does not address *Rosen v. eBay, Inc.*, where the court

4  rejected the plaintiff's attempt to sustain a direct infringement claim based on

5  allegations that the plaintiff failed to "remove the infringing images" after being

6  notified of the alleged infringement.  2018 WL 4808513 at *5 (C.D. Cal. Apr. 4,

7  2018).  Backgrid thus concedes that its allegations that Twitter did the same (*see* FAC

8  ¶ 34) do not support a claim for direct copyright infringement.[1]  Nor does Backgrid

9  attempt to distinguish *Rosen*'s holding that the plaintiff failed to state a claim for

10  direct infringement because he did "not allege that Defendant's systems are not

11  automated, or that [a user] did not use Defendant's automated systems to post the

12  infringing images."  2018 WL 4808513 at *5.  Backgrid's failure to even address

13  *Rosen* further supports dismissal of its claim.

14      **B.**    **Backgrid Fails To Show It Adequately Alleged A Nexus Between Twitter's Alleged Conduct And The Alleged Infringements**

15

16        Backgrid offers ***no response*** to Twitter's argument (Mot. 10) that Backgrid

17  fails to state a claim for direct infringement because its allegations do not establish

18  any "nexus" between Twitter's alleged conduct and the claimed infringement.  In

19  other words, Backgrid fails to explain how its allegations support a claim for direct

20  infringement when none specifically relates to the ***Backgrid photographs*** at issue in

21  the FAC.  This "more fundamental problem" with Backgrid's allegations is fatal to

22  its claim.  *See Stross*, 2022 WL 1843142, at *3 (dismissing claim for direct

23  infringement where "[n]ot a single allegation in Plaintiff's FAC suggests that Twitter

24  actively (or even passively) copied, shared, or reposted ***Plaintiff's*** posts.") (emphasis

25  in original).  Thus, like the plaintiff in *Stross*, who alleged that Twitter's curation team

26  ――――――――――――――――――

27  [1]  Backgrid ignores Twitter's showing (Mot. 5) that Backgrid's allegations, which it repeats now (Opp. 2, 4), that all the Tweets that it allegedly identified in its

28  purported DMCA notices remain live, are demonstrably false.

"finds and highlights 'great Tweets,' including photographs,'" but did "not allege that any of *his photographs* were ever selected by Twitter's team for placement in a moment," *id*. at *3 (emphasis added), Backgrid fails to identify any allegation that Twitter "select[ed], order[ed], and/or arrang[ed]" any Tweets containing Backgrid's photographs (*see* Opp. 9). Nor has Backgrid alleged that any Tweet containing any of *its photographs* was ever included in emails that Twitter allegedly sent to users or promoted "based on subscription models." (FAC ¶ 34.)

Nowhere in its opposition does Backgrid even attempt to show how it adequately alleged a nexus between Twitter's alleged conduct and the infringements at issue. Again, Backgrid declines to address this Court's dismissal of a direct infringement claim against Twitter in *Stross* for failure to adequately allege a nexus, or to explain why the same reasoning does not apply here. Thus, even if the conduct Backgrid alleges is "volitional," Backgrid's claim for direct infringement still must be dismissed for failure to show that any such volitional conduct led to infringement of any of its own works. *See BMG Rts. Mgmt.*, 2022 WL 17578247 at *3 (dismissing direct infringement claim because the plaintiff, while alleging "that [the defendant] promotes infringing content, including HouseofBrooklyn's, . . . is unable to identify a single promoted video that infringes Plaintiff's copyrighted works"). And while Backgrid argues it is "the world's largest celebrity photograph agency" (Mot. 1), with the implication being that its "paparazzi" photographs are of great value, Backgrid does not allege any facts showing that Tweets containing its photos actually generated meaningful engagement such that Twitter would have had reason to "promote" them.

Finally, Backgrid's authorities do not support its argument that it adequately alleged Twitter's volitional conduct. *Stross v. Meta Platforms, Inc.*, 2022 WL 1843129 (C.D. Cal. Apr. 6, 2022) (cited at Opp. 8), actually *supports dismissal* of Backgrid's claim. There, this Court dismissed a direct infringement claim supported by an allegation that, "upon information and belief[,] . . . Facebook selected, curated, suggested, and recommended the copyrighted works to appear on user's News Feeds."

*Id.* at *3.  The Court rejected this allegation as "merely a disguised legal conclusion that Defendant engaged in volitional conduct."  *Id.* (citing *Iqbal*, 556 U.S. at 678).  The Court added that, "[b]y failing to allege even a single instance of ***Plaintiff's photographs*** appearing in any user's News Feed or in the Moments or Place Tips features, Plaintiff only alleges that his photographs appeared on Facebook's servers," but a "website that passively hosts an infringing work does not engage in volitional conduct."  *Id.* (emphasis added).  Backgrid's conclusory allegations of Twitter's volitional conduct likewise cannot support its direct infringement claim here.

And in *Williams-Sonoma, Inc. v. Amazon.com, Inc.*, the plaintiff alleged that "Amazon's algorithm selected, copied, and publicly displayed [the plaintiff's] Peppermint Bark Photo" on Amazon.com "where Amazon shoppers who searched for that product saw it."  627 F. Supp. 3d 1072, 1083 (N.D. Cal. 2020).  The court found persuasive the plaintiff's argument that "Amazon is actually performing the acts of reproduction and display that constitute infringement."  *Id.* at 1082-83.  Here, Backgrid identifies no allegations that Twitter (or even its "algorithm") has reproduced or displayed any of Backgrid's photographs, and Backgrid's reliance on this case is unpersuasive too.

## II.  BACKGRID FAILS TO SHOW IT STATED VALID CLAIMS FOR INDIRECT COPYRIGHT INFRINGEMENT

### A.  Backgrid Fails To Show It Adequately Alleged Underlying Direct Infringement

As Twitter showed (Mot. 11), Backgrid failed to state valid claims for indirect (contributory and vicarious) copyright infringement because Backgrid did not allege any specific underlying acts of direct copyright infringement by any third parties.  In response, Backgrid points (Opp. 9) to the screenshots of Tweets it submitted in Exhibit B to the FAC, but the only thing Backgrid alleged about those screenshots is that they depicted works that "Twitter had infringed."  (FAC ¶¶ 26, 33.)  Backgrid argues in a footnote (Opp. 10 n.3) that "general allegations that users engaged in direct infringement is [sic] enough," but Backgrid's references to Exhibit B do not

even amount to "general allegations" about specific acts of direct infringement by third parties.  Backgrid has thus failed to adequately allege this required element of its claims for indirect infringement.

### B. Backgrid Fails To Show It Adequately Alleged Contributory Infringement

Backgrid's attempts to show that it adequately pled contributory infringement misunderstand Twitter's arguments and ignore key authorities showing that the allegations in Backgrid's FAC do not support its claim.

*First*, Backgrid fails to show that it adequately alleged Twitter's "actual knowledge of specific acts of infringement." (*See* Mot. 11 (citing *Giganews*, 2014 WL 8628031 at *7).)  Backgrid's sole theory of Twitter's "actual knowledge" is premised on its submission of thousands of "DMCA notices" to Twitter.  Backgrid does not dispute that, for purposes of a claim for contributory infringement against an internet service provider like Twitter, a DMCA notice is "effective" to provide notice of an act of infringement only if it complies with 17 U.S.C. § 512(c)(3)(A), which requires, among other things, that the notice include an "[i]dentification of the copyrighted work claimed to have been infringed." (*See* Mot. 11-12.)  Yet Backgrid points to no allegations that any (let alone all) of the purported DMCA notices it sent included this information.  *See Rosen v. Hosting Servs., Inc.*, 771 F. Supp. 2d 1219, 1222 (C.D. Cal. 2010) (dismissing claim for contributory infringement where the defendant's alleged "knowledge [was] based on a takedown notice, and that notice [was] ineffective" because it failed to "contain information identifying the copyrighted work that allegedly has been infringed") (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer On Copyright, § 12B.04[B][2] at 12B-61).[2]

---

[2]   In fact, as Twitter promptly advised Backgrid in response to each purported DMCA notice Backgrid sent (though as Backgrid misleadingly failed to mention in its complaint or FAC), none of Backgrid's purported DMCA notices identified the copyrighted photos that Backgrid claims were infringed, which is why Backgrid is stridently trying to avoid having to allege this information.

Moreover, Backgrid conspicuously did not include copies (or even describe) its DMCA notices in its initial complaint or FAC. Instead, Backgrid argues (Opp. 11) that all it had to do was allege that its DMCA notices were "compliant," and "the discussion should end there." Not so. Backgrid's obligation was to plead "sufficient factual matter" to state a plausible claim that Twitter had actual knowledge of specific acts of infringement, and "mere conclusory statements," *see Iqbal*, 556 U.S. at 678, or "legal conclusions" that are "cast in the form of factual allegations," *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011), are not entitled to an assumption of truth. Backgrid's threadbare, conclusory allegation that all its "DMCA notices" were "compliant" is thus insufficient. *See BMG Rts. Mgmt.*, 2022 WL 17578247 at *4 ("While Plaintiff identifies a handful of specific examples of infringement that it is aware of, Plaintiff fails to identify any individual copyrighted song that Defendants knew was being infringed. Without more, the allegations support only Bigo's generalized knowledge of the possibility of infringement, and amount to little more than a threadbare recital of an element for contributory infringement.").

Backgrid also errs in arguing (Opp. 11-12) that it should not have to allege facts showing that its DMCA notices were compliant because it did not have to send DMCA notices at all to put Twitter on notice of the alleged acts of infringement. But even if, theoretically, there are other ways to put a defendant on notice of infringement, the only theory of notice that Backgrid alleges here is based on its supposed transmission of compliant DMCA notices. Backgrid thus misplaces reliance (Opp. 11-12) on cases where the plaintiff alleged facts showing the defendant had actual knowledge of specific acts of infringement through means other than (or in addition to) a DMCA notice. *Cf. Dunham v. Lei*, 2021 WL 4595808, at *6 (C.D. Cal. June 7, 2021) (plaintiff alleged that defendants took down infringing products in response to DMCA notices only to have them again become available on its websites, showing that defendants "permitted identical infringement to continue"); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098 (N.D. Cal. 2008)

1 (on summary judgment, plaintiff offered evidence of letters and emails it sent to

2 defendant).  Here, Backgrid alleges no facts showing Twitter's knowledge of the

3 infringements other than through the purported DMCA notices it sent, so it is

4 Backgrid's burden to plead facts showing that its notices were effective.

5      Backgrid's allegations of "willful blindness" (Opp. 12) are similarly

6 inadequate, as Backgrid merely alleges that Twitter "willfully" refused to remove the

7 infringing Tweets in response to Backgrid's DMCA notices (*see* FAC ¶ 19).  Given

8 that Backgrid's theory of "actual knowledge" is still premised on Backgrid having

9 sent "compliant" DMCA notices, it cannot avoid its obligation to plead "sufficient

10 facts" showing it sent compliant DMCA notices simply by alleging "willfulness."[3]

11      ***Second***, Backgrid fails to show that it adequately alleged Twitter's material

12 contribution to the alleged third-party infringement.  Backgrid claims (Opp. 13) that

13 Twitter "conflates the 'knowledge' requirement with the 'material contribution

14 prong,'" yet it ignores the established principle that a material contribution theory of

15 infringement requires "*actual* knowledge that *specific* infringing material is available

16 using [a defendant's] system," *Giganews, Inc.*, 847 F.3d at 671 (emphasis in original).

17 Because the sole basis for Twitter's alleged "actual knowledge" are Backgrid's

18 purported DMCA notices, Backgrid's failure to show that it adequately alleged that

19 those notices were effective is also fatal to its material contribution theory.

20      ***Third***, Backgrid likewise fails to show that it adequately alleged Twitter's

21 material inducement.  "[T]he standard for inducement liability is providing a service

22 with the object of promoting its use to infringe copyright." *Perfect 10, Inc. v. Visa*

23 *Intern. Service Ass'n*, 494 F.3d 788, 801 (9th Cir. 2007) (quoting *Metro-Goldwyn-*

24

25 ───────────────
[3]  Backgrid relies (Opp. 12) on *UMG Recordings, Inc. v. Mahakkapong*, 2015 WL

26 12803768 (C.D. Cal. Feb. 9, 2015), but that decision did not concern an internet

27 service provider or mention the DMCA, and the plaintiff's theory of the defendant's

"actual knowledge" for purposes of contributory infringement was not premised on

28 it having sent DMCA notices to the defendant.

*Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 937 (2005)).  Here, Backgrid merely alleges that Twitter encourages users to "upload and edit photographs on the Internet, fail[s] to advise users that civil and criminal penalties attach to [copyright infringement], and . . . created a system and practice of removing metadata from each unlawfully posted and displayed Celebrity Photograph." (FAC ¶ 35.) These practices, even if assumed true, by no means show that Twitter's object is to promote infringement, as there is no reason to believe these practices lead Twitter users to believe the Twitter platform is to be used for infringing purposes. *See Grokster*, 545 U.S. at 938 (defendant had object of promoting use of product to infringe when it communicated a "clear message" that it was to be used for infringing purposes).

## C.  Backgrid Fails To Show It Adequately Alleged Vicarious Infringement

Backgrid fails to show that it adequately alleged either of the requirements of a claim for vicarious copyright infringement.

*First*, Backgrid fails to show that Twitter has the "right and ability to supervise the infringing conduct." *Giganews*, 847 F.3d at 673. Even under *Napster*'s standard that Backgrid argues should apply here (Opp. 15), Backgrid has not shown that Twitter has the "general ability to locate infringing material and terminate users' access," *UMG Recordings, Inc. v. Shelter Cap. Partners*, 718 F.3d 1006, 1030 (9th Cir. 2013) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001).[4]  The Ninth Circuit's decision in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), is instructive.  There, the court held that Google did not have the right and ability to control infringement on third-party websites because "[w]ithout image-recognition technology, Google lacks the practical ability to police

---

[4]  Backgrid also cites to *Cook v. Meta Platforms Inc.*, No. 4:22-cv-02485-YGR, (Dkt. 40) (N.D. Cal. Jan. 4, 2023), but in that order, the court explained that, unlike here, the "defendant has provided no argument regarding plaintiff's ability to meet the first prong of her vicarious infringement claim," *id*. at 9-10.

the infringing activities" on those websites. *Id*. at 1174. The court affirmed the district court's findings that "Google's supervisory power is limited because 'Google's software lacks the ability to analyze every image on the [I]nternet, compare each image to all the other copyrighted images that exist in the world … and determine whether a certain image on the web infringes someone's copyright." *Id*. Here, as in *Amazon*, Twitter lacks the practical ability to police all the content on its platform which, according to Backgrid, averages 7.1 billion visits per month (FAC ¶ 9).

Moreover, Backgrid again offers no response to Twitter's reliance on Judge Wilson's recent decision in *Stross v. Twitter* (*see* Mot. 15), in which the Court dismissed the plaintiff's vicarious infringement claim for failure to plead any "facts to suggest that Twitter had the practical ability to locate and remove his photos without any knowledge of them or their location." 2022 WL 1843142, at *4, n.2; *see also Vander Music v. Azteca Int'l Corp.*, 2011 WL 13177301, at *7 (C.D. Cal. Jan. 21, 2011) ("In the SAC, Plaintiff does not proffer any facts to suggest that Defendant had the ability to police the content or transmission of TV Azteca's television programming for infringing activity."). Backgrid has similarly failed to plead any such facts, and it cannot even muster an argument to the contrary.

***Second***, Backgrid fails to show that it adequately alleged a "causal relationship between the infringing activity and any financial benefit" to Twitter. *Giganews*, 847 F.3d at 673. Backgrid concedes (Opp. 16) it has not alleged "specific examples" showing that Twitter derived a financial benefit from its copyrighted photographs in particular, but deems this "irrelevant" because it alleged generally that Twitter "monetizes its platform" in various ways—and in particular through features that are in no way dependent on copyright infringement, let alone on the infringement of Backgrid's photographs. But far from being "irrelevant," the controlling Ninth Circuit law requires a plaintiff to show more than that a defendant derived a financial benefit from providing "access [to] infringing material generally," *id*. at 674, and Backgrid here does not allege even that. Thus, as in *Stross v. Twitter*—which

Backgrid again ignores—Backgrid has failed to allege "any sort of plausible link between the photographs at issue and any financial benefit to Twitter." 2022 WL 1843142, at *4 n.2; *see Stross v. Meta*, 2022 WL 1843129 at *3 (dismissing vicarious infringement claim where plaintiff's allegation "only shows that copyright infringement in general occurs on the Facebook platform, which is not sufficient to show that Defendant drew users to Facebook because of Plaintiff's infringed works").

## III. BACKGRID FAILS TO SHOW IT STATED A VALID CLAIM FOR DECLARATORY RELIEF

Backgrid concedes that its claim for declaratory relief seeks not only a judgment that Twitter has no valid DMCA "safe harbor" defense to the alleged copyright infringements of Backgrid's works at issue in the FAC, but also that Twitter's "DMCA policy" is "invalid . . . as to ***all similarly situated plaintiffs, not just as to Backgrid***." (Opp. 19 (emphasis added).) Twitter showed in its motion (p. 19) that to the extent Backgrid seeks to preclude Twitter from ever asserting a DMCA defense against any infringement claim asserted by anyone as to any work, its claim is wildly overbroad and this Court lacks jurisdiction to adjudicate it.

Backgrid elides this issue in its opposition brief. It argues (Opp. 17) there is a "definite and concrete" dispute between Backgrid and Twitter because Backgrid purportedly sent thousands of DMCA-compliant notices but Twitter allegedly "did not take down even one infringement nor did it terminate a single user," but it fails to explain how this dispute between the parties involving specific alleged infringements of Backgrid's photos would also encompass any current or conceivable copyright dispute between Twitter and any other "similarly situated plaintiffs" involving copyrighted works not at issue in the complaint (or indeed that may not even exist yet). This case is not a class action, and Backgrid lacks standing to assert claims on behalf of "similarly situated plaintiffs." Rather, the Article III case-or-controversy requirement precludes Backgrid from bringing, and this Court from adjudicating, such a claim for declaratory relief that "reach[es] far beyond the

1   particular case." *Veoh Networks v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265,

2   1269 (S.D. Cal. 2007).

3         Backgrid fails to distinguish *Veoh*, and misses the point of that case, by

4   arguing that in *Veoh*, the plaintiff (an alleged infringer asserting a claim for

5   declaratory relief) was seeking a blanket "validation" of its business model, whereas

6   here, Backgrid seeks a blanket "invalidation" of Twitter's DMCA defense.  (Opp.

7   18.)  This is a distinction without a difference.  The *Veoh* court held that the

8   plaintiff's declaratory relief claim was not justiciable because the blanket finding of

9   DMCA safe harbor that it sought was "[d]ivorced from a particular dispute over

10  specific rights," and instead "would have the Court declare a safe harbor as equally

11  applicable against Defendants as to any other copyright holder."  *Veoh*, 522 F. Supp.

12  2d at 1270.  The Court noted this was improper even as to the plaintiff's

13  (unspecified) alleged infringements, but particularly as to unspecified potential

14  infringements by third parties, "given the highly factual and time-sensitive findings

15  required to satisfy" the DMCA.  *Id*. at 1270 n.3.  The same reasoning applies here to

16  render Backgrid's claim an improper and nonjusticiable request for an advisory

17  opinion.  Thus, at a minimum, Backgrid's claim for declaratory relief must be

18  limited to whether Twitter has a valid DMCA defense to the specific alleged

19  infringements Backgrid alleges in its FAC.

20        But the Court should dismiss the claim outright for independent reasons.

21  Backgrid does not dispute that the Court has broad discretion to dismiss any claim

22  for declaratory relief, including where it is premature or redundant.  (*See* Mot. 20-

23  21.)  And here, it is both.  Backgrid argues (Opp. 19) that because it has been

24  anticipating a potential DMCA defense from Twitter by sending Twitter purported

25  DMCA notices, that somehow converts Twitter's defense into something else that

26  Backgrid can preemptively adjudicate.  There is no support for this argument, and it

27  is contrary to law.  *See* 17 U.S.C. 512(l) (DMCA safe harbor is a "limitation of

28  liability"); *Amazon.com*, 508 F.3d at 1158 (DMCA is an "affirmative defense").

1    Indeed, Backgrid cites to no authority that has ever preemptively adjudicated **any**

2    affirmative defense through a nominal claim for declaratory relief, let alone a

3    defense under the DMCA.

4         Moreover, Backgrid fails (Opp. 19 n.10) to distinguish *Divino* and *Newman*,

5    which both support the dismissal of Backgrid's claim for declaratory relief.  In both

6    cases, the plaintiffs' attempt to anticipate an affirmative defense through a claim for

7    declaratory relief formed at least part of the basis for the dismissal of the claim.  *See*

8    *Divino Grp. LLC v. Google LLC*, 2021 WL 51715, at *10-11 (N.D. Cal. Jan. 6,

9    2021) ("First . . . .  plaintiffs have failed to state a claim . . . .  Second . . . plaintiffs .

10   . . included a claim for declaratory relief in anticipation of defendant's assertion of

11   Section 230 immunity . . . ."); *Newman v. Google LLC*, 2021 WL 2633423, at *14

12   (N.D. Cal. June 25, 2021) ("The Court dismisses Plaintiffs' declaratory judgment

13   claim for two reasons.").  And Backgrid fails to respond to the reasoning in both

14   cases that "using the Declaratory Judgment Act to anticipate an affirmative defense

15   is not ordinarily proper."  *Newman*, 2021 WL 2633423, at *14 (quoting *Divino*,

16   2021 WL 51715, at *11).  Nor does Backgrid dispute (*see* Mot. 21) that "[d]ismissal

17   of a declaratory relief claim intended to anticipate an affirmative defense is

18   appropriate, particularly where, as here, the Court need not consider the affirmative

19   defense in order to resolve defendants' motion to dismiss plaintiffs' other claims."

20   *Divino*, 2021 WL 51715 at *11.

21        Finally, even if it were appropriate for Backgrid to attempt to preemptively

22   adjudicate Twitter's affirmative defense, it is unnecessary for it to do so through a

23   claim for declaratory relief because—as Backgrid does not dispute—the merits of

24   that defense can be fully adjudicated through Twitter's assertion of the defense.

25   Backgrid's claim thus also fails for being redundant.  (*See* Mot. 21.)

26

27

28

## IV.  THE COURT SHOULD NOT ALLOW FURTHER LEAVE TO AMEND

To the extent the Court dismisses Backgrid's claims, there is no basis for the Court to grant leave to amend.  A court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011).  Here, Backgrid already amended once after the parties met and conferred regarding the arguments Twitter intended to raise in its motion to dismiss the initial complaint.  Although Backgrid asks for further leave to amend, it does not even hint at what more it could allege to address the deficiencies in its pleading that Twitter has identified, showing that further leave to amend would be futile.  *See, e.g.*, *Joycette Goodwin v. Walgreens, Co.*, 2023 WL 4037175, at *7 (C.D. Cal. June 14, 2023) (Gee, J.) (dismissing complaint without leave to amend after plaintiff voluntarily amended once before first motion to dismiss was decided); *Reed v. Nat'l Football League*, 2015 WL 13344625, at *3 (C.D. Cal. Dec. 18, 2015) (Gee, J.) (citation omitted), *aff'd*, 683 F. App'x 619 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1610 (2018) (noting that "courts have the discretion to deny leave to amend for futility of amendment"); *Wanxia Liao v. United States*, 2012 WL 3945772, at *6 (N.D. Cal. Apr. 16, 2012) (finding leave to amend would be futile because plaintiff already amended and still made insufficient allegations).[5]

## CONCLUSION

For the foregoing reasons, Twitter respectfully requests that the Court dismiss the FAC without leave to amend.

---

[5]  Backgrid misplaces reliance (Opp. 19) on the liberal standards for granting leave to amend under Rule 15(a)(2), which do not apply to whether leave should be granted after Rule 12 a motion to dismiss is granted.

1  DATED:  June 30, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By _____/s/ Daniel C. Posner_____
    Daniel C. Posner
    Attorneys for Twitter, Inc.

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2        The undersigned, counsel of record for Twitter, Inc., certifies that this brief

3   contains 5,385 words, which complies with the word limit of L.R. 11-6.1.

4

5   DATED:  June 30, 2023                    QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
6

7

8                                    By  _____/s/ Daniel C. Posner_____

9                                        Daniel C. Posner
                                         Attorneys for Twitter, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28